[Nos. 47145–2, 47202–5.   En Banc.   April 8, 1982.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Petitioner,*
v. MAURA McGAHAN WISCOMB, ET AL,
*Respondents.*

RITA MARSTEN, *Respondent,* v. MUTUAL OF ENUMCLAW
INSURANCE COMPANY, *Appellant,* CHARLES
ROBERT MARSTEN, *Respondent.*

*Murray, Dunham & Waitt,* by *Wayne Murray,* for petitioner.

*Stephen P. Larson* (of *Stafford, Frey & Mertel*), for appellant.

*Faith Enyeart,* for respondents Wiscomb.

*Thomas J. Chambers* (of *Chambers & Young*) and *Donald S. Means,* for respondent Marsten.

*William R. Hickman* on behalf of State Farm Mutual Insurance Company, amicus curiae for petitioner.

WILLIAMS, J.—Respondent Maura McGahan Wiscomb was seriously injured in a collision between the motorcycle she was operating and an automobile driven by her husband. Petitioner Mutual of Enumclaw Insurance Company provided both liability and uninsured motorist coverage for the Wiscomb vehicles. Maura Wiscomb commenced a lawsuit against her husband alleging personal injuries as a result of his negligence. Her husband tendered the defense to petitioner, which brought a declaratory judgment action to determine the question of insurance coverage. The trial court ruled that the petitioner was relieved of its obligation under the family or household exclusion clause of the insurance policy.[1] The Court of Appeals reversed, holding

---

[1]The family or household exclusion clause of the Mutual of Enumclaw insurance policy reads as follows:

the exclusion clause to be void as against public policy. *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 25 Wn. App. 841, 611 P.2d 1304 (1980). We affirmed the Court of Appeals on the same public policy grounds. *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 95 Wn.2d 373, 622 P.2d 1234 (1980). Pursuant to RAP 12.4, RCW 2.04.170, and SAR 23, we granted Mutual of Enumclaw's motion for reconsideration on March 11, 1981. We now reaffirm our earlier decision, but take this opportunity to address additional issues raised by the amicus curiae brief on behalf of State Farm Mutual Automobile Insurance Company.

Respondent Rita Marsten was injured in a 1–car accident. At the time of the accident, she was a passenger in a pickup truck driven by her husband. Appellant Mutual of Enumclaw Insurance Company provided liability coverage for the Marsten vehicle. The Marstens' insurance policy, like the Wiscombs', also contained a family or household exclusion clause. Rita Marsten brought a declaratory judgment action seeking a ruling that the exclusion clause in the insurance policy was void as against public policy. The trial court, relying on our decision in *Wiscomb,* granted Marsten's motion for summary judgment. Direct appeal was taken, and the case was consolidated for argument with the *Wiscomb* rehearing. In light of our reaffirmation of the earlier holding in *Wiscomb,* we affirm the trial court's ruling which granted Rita Marsten's motion for summary judgment.

In these consolidated cases, we are again called upon to determine the validity and effect of family or household exclusion clauses in automobile insurance policies. Nothing presented on rehearing, either by the parties or amicus for State Farm Mutual Automobile Insurance Company, changes our basic belief that the family or household exclu-

---

Exclusions: This policy does not apply . . .:

. . .

(1) to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.
Clerk's Papers, at 43.

sion clause violates the public policy of this state.

As we noted in our previous decision, the proper starting place for the public policy analysis is the Washington financial responsibility act, RCW 46.29. While the act does not require mandatory insurance coverage, it nevertheless conveys a strong public policy implicit in its provisions. Quite simply, the statute creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others. This public policy is clearly demonstrated by the manner in which the statute operates.

The financial responsibility act does not require an individual to prove that he is financially able to compensate those he may injure through the use of his vehicles until he is involved in an automobile accident resulting in bodily injury or death of any person or property damage of $300 or more. RCW 46.29.060. If such an accident occurs, the 2–pronged approach of the financial responsibility act comes into play.

First, if the injured or damaged person[s] submits information indicating the extent of injuries or damage within 180 days of the accident, the other party must demonstrate financial responsibility to the injured or damaged person[s]. RCW 46.29.070(2). Unless the individual already carries liability insurance coverage or can demonstrate financial responsibility in some other manner, *see* RCW 46.29.080, he must post an

> amount of security . . . sufficient . . . to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each driver or owner.

RCW 46.29.070(1).

Second, the financial responsibility act requires the individual to demonstrate "financial responsibility for the future". This term is defined by the act as follows:

> *Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effec-*

*tive date of said proof,* arising out of the ownership, maintenance, or use of a vehicle . . .

(Italics ours.) RCW 46.29.260. The individual may demonstrate financial responsibility for the future by: (1) filing a certificate of insurance; (2) posting a bond; (3) depositing securities in the amount of $60,000; or (4) providing a certificate of self–insurance. RCW 46.29.450. As a practical matter, the first method represents the only way most people can comply with the second prong of the act.

This brief review of the statutory scheme should make one thing very clear—the act will not apply until the need arises to assure an adequate pool of funds for compensation. Thus, to the greatest extent possible without requiring mandatory insurance coverage, the Legislature has demonstrated its intended policy of providing adequate compensation to those injured through the negligent use of this state's highways. In *LaPoint v. Richards,* 66 Wn.2d 585, 403 P.2d 889 (1965), we recognized that the intended purpose of the financial responsibility act is

> for the benefit of owners and drivers of motor vehicles . . . and, *more fundamentally,* [it is] *designed to give monetary protection to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others.*

(Italics ours.) *LaPoint,* at 590. The policy of providing compensation to victims is borne out by the financial responsibility act's focus on those who have been injured by a driver in the past *and* those who may be injured by him in the future. In each of the two prongs of the financial responsibility act, there is a requirement that some source of funds be made available to redress the victims of automobile accidents.

This strong public policy of assuring protection to the innocent victims of automobile accidents was previously recognized by this court in *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 332, 494 P.2d 479 (1972), where in interpreting the uninsured motorist statute, we

said:

> [The uninsured motorist statute] is but one of many regulatory measures designed to protect the public from the ravages of the negligent and reckless driver. . . . *The statute is both a public safety and a financial security measure. Recognizing the inevitable drain upon the public treasury through accidents caused by insolvent motor vehicle drivers who will not or cannot provide financial recompense for those whom they have negligently injured, and contemplating the correlated financial distress following in the wake of automobile accidents and the financial loss suffered personally by the people of this state, the legislature for many sound reasons and in the exercise of the police power took this action to increase and broaden generally the public's protection against automobile accidents.*

(Italics ours.) This same public policy has been carried over into the new underinsured motorist statute, RCW 48.22.030 *et seq.,* and pervades our entire scheme of insurance legislation. *See generally* Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819 (1980).

The family or household exclusion clause strikes at the heart of this public policy. This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. In essence, this clause excludes from protection an entire class of innocent victims for no good reason.

This exclusion becomes particularly disturbing when viewed in light of the fact that this class of victims is the one most frequently exposed to the potential negligence of the named insured. Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

■ The family or household exclusion clause is different from previous exclusions approved by our courts because it focuses not on the risk associated with who is driving the vehicle, but on which parties are injured. To illustrate, in *St. Paul Fire & Marine Ins. Co. v. Circle Bar J Boys' Ranch, Inc.,* 1 Wn. App. 377, 461 P.2d 567 (1969), the court approved an exclusion which relieved the insurer from coverage when any automobile was driven by a person under 25 years of age. In *Royse v. Boldt,* 80 Wn.2d 44, 491 P.2d 644 (1971), we refused to invalidate a provision excluding coverage for any accident occurring while the vehicle was being operated by any driver other than the named insured, a resident of his household, or a driver specifically named in the policy. Finally, in *Barkwill v. Englen,* 57 Wn.2d 545, 358 P.2d 317 (1961), we approved a policy containing a "student and servicemen's endorsement" which provided for exclusion from coverage if the vehicle was operated by any person other than the named insured or a member of his family. Clearly, each of the three exclusions approved in the above cases focused on the increased risks attendant with operation of the vehicle by one other than a person the insurer had agreed to insure. These exclusions are valid because they are directed at the driver—the party who is or may be negligent. An insurer is free to limit its risks by excluding coverage when the nature of its risk is altered by factors not contemplated by it in computing premiums, such as the use of a vehicle by an unauthorized driver. The family or household exclusion, by contrast, is directed at a class of innocent victims who have no control over the vehicle's operation and who cannot be said to increase the *nature* of the insurer's risk. An exclusion which denies coverage when certain victims are injured is violative of public policy. *See Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 885–86 (N.D. 1975).

The principal rationale usually offered in support of family or household exclusions is the protection afforded the insurer from fraudulent or collusive lawsuits among family members. *See State Farm Mut. Auto. Ins. Co. v.*

*Phillips,* 2 Wn. App. 169, 177, 467 P.2d 189, 46 A.L.R.3d 1013 (1970). This argument is wholly unpersuasive because the exclusion far exceeds the evil which it is designed to protect against; collusion and fraud are the exception rather than the rule. At least as likely an opportunity for fraud or collusion exists as a result of our invalidation of the "physical contact" requirement for uninsured motorist coverage in *Hartford Accident & Indem. Co. v. Novak,* 83 Wn.2d 576, 520 P.2d 1368 (1974). In *Novak,* we rejected as contrary to public policy the requirement of physical contact between vehicles simply to prevent the possibility of fraudulent insurance claims. Despite the potential for fraud or collusion under those circumstances, the Legislature has not overturned the rule of *Novak* by legislation. Additionally, we have rejected the notions of intrafamily tort immunity in favor of individualized judicial determinations on issues which may involve intrafamily fraud or collusion. *See Freehe v. Freehe,* 81 Wn.2d 183, 189, 500 P.2d 771 (1972); *Borst v. Borst,* 41 Wn.2d 642, 653, 251 P.2d 149 (1952).

In our previous decision in this case, we stated that insurance contracts have traditionally been held to be private contracts between parties. *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 449, 313 P.2d 347 (1957). As a private contractor, the insurer is ordinarily permitted to limit its liability unless inconsistent with public policy or some statutory provision. *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 272, 124 P.2d 950, 142 A.L.R. 1 (1942). Petitioner and amicus for State Farm Mutual Automobile Insurance Company argue that the family or household exclusion merely reflects a choice by the insurer not to accept additional risks which would increase insurance premiums. They argue that if the insured wishes to add that additional coverage, she is free to bargain with another insurer who offers such coverage. Four policies without the family or household exclusion clause are appended to the amicus brief to demonstrate the availability of such policies in Washington. Appendix to Brief of Amicus Curiae for State Farm Mutual Automobile

Insurance Company. While we do not recognize these policies as evidence or a supplementation of the record, even if we treated those policies as evidence their availability would be unhelpful to the petitioner's cause in these consolidated cases. Resorting to the insurance policies of other insurers to support the "freedom of contract" rationale is unpersuasive for several reasons.

First, there is no evidence indicating that the policies contained in the amicus brief for State Farm Mutual Automobile Insurance Company are currently available in this state, since amicus admits they "were located by examining *current and recently closed files* . . ." (Italics ours.) Brief of Amicus Curiae for State Farm Mutual Automobile Insurance Company, at 2. Additionally, there is nothing to indicate the cost of such policies, if available, and whether such costs are reflective of the so-called "increased risks" of a policy without the exclusion.

Second, to say there was freedom of contract in these cases is to ignore reality. A number of insurers in this state will not sell a policy without the family or household exclusion. The amicus brief makes it apparent that its client, State Farm Mutual Automobile Insurance Company, as well as Farmers Insurance Company, American States Insurance Company, and Mutual of Enumclaw Insurance Company will not "contract" to cover this risk. Brief of Amicus Curiae for State Farm Mutual Automobile Insurance Company, at 2-3. Such a state of affairs undercuts any assertion that the parties are free to contract for this coverage. The contract analysis might be persuasive if this were a coverage that one could choose to purchase or not purchase from each insurer. The present arrangement, however, is a take–it–or–leave–it proposition. Furthermore, it is highly unlikely that insurance agents will jeopardize sales by volunteering the fact that such exclusions are contained in their company's insurance policies while other companies offer policies without these exclusions.

Third, this exclusion affects third parties who are in no position to contract for insurance coverage. For instance,

this exclusion applies with equal force to an infant child of the named insured as well as adults who may not actually participate in the insurance arrangements. Although the cases now before us involve injured spouses, the same exclusion clause would cause a denial of financial protection to innocent children who are incompetent to validly contract away their rights.[2] This also undercuts the idea of freedom of contract and appears to us to be clearly against public policy. *See Schwab v. State Farm Fire & Cas. Co.,* 27 Ariz. App. 747, 558 P.2d 942 (1976).

There was no freedom of contract in either of the cases before us because the Wiscombs and Marstens were unable to contract with the petitioner to avoid the effect of the family or household exclusion clause. Additionally, there is no evidence the exclusion was ever called to their attention or that they knew of its existence in their policies. A different question would be presented if the policy provided this coverage and the individual insureds and insurers contract for the exclusion. The exclusion would have to be narrowly tailored to exclude coverage only when *named* insureds residing in the same household are injured. Thus, named insureds would be free to retain or relinquish the coverage from their insurer after the coverage is called to their attention. Those named insureds could then intelligently choose to add the exclusion, with an adjustment in their premiums reflecting any decreased risks, or retain the coverage at the higher premium rate.[3] *See Grange Ins. Ass'n*

---

[2]Even if we adopted the freedom of contract analysis as to the family or household exclusion clause, minors under the age of 18 years are incompetent to contract away their rights. RCW 26.28.015(4). A minor could disaffirm such "contracts" during his or her minority or within a reasonable time after attaining the age of majority. RCW 26.28.030.

[3]Since petitioner and amicus for State Farm Mutual Automobile Insurance Company argue that this coverage is not offered by many insurers due to the increased risks involved, we presume that any additional premiums attributable to the elimination of this particular exclusion will bear a rational relationship to the costs of covering only such increased risks.

*v. Great Am. Ins. Co.,* 89 Wn.2d 710, 575 P.2d 235 (1978). Under any circumstances, exclusion clauses which purport to deny coverage to children of the insured or any person not a party to the insurance contract are violative of this state's public policy. We reserve for a later date the question of the validity of exclusions which are consciously bargained for by the insurer and named insureds in the manner described above.

As an alternative argument for overturning our previous decision, the amicus brief for State Farm Mutual Automobile Insurance Company asserts that the parties could have protected themselves even under the Mutual of Enumclaw Insurance Company policy by purchasing Personal Injury Protection (PIP) coverage. This is only partially correct. PIP coverage will not compensate an injured party, for example, for any pain and suffering. Neither will its protection exceed $20,000 in lost wages and an equal amount in medical coverage. This limited coverage simply is inadequate as a substitute for liability coverage, especially when the expenses of medical bills, lost wages, lost services and so on exceeds the modest PIP coverages.

The family or household exclusion clause violates this state's public policy of assuring compensation to the victims of negligent and careless drivers. The strength of this public policy overrides any "freedom of contract" analysis—at least when the parties to the insurance contract have not truly bargained for such an exclusion. Where provisions in insurance policies are inconsistent with public policy, we have not been hesitant to strike them down. *See Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972); *Baker v. Seattle,* 79 Wn.2d 198, 200–01, 484 P.2d 405 (1971); *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 124 P.2d 950, 142 A.L.R. 1 (1942). We find the family or household exclusion clause to be violative of this state's public policy in each of the cases before us.

We affirm the Court of Appeals in Mutual of Enumclaw

Insurance Company v. Wiscomb, No. 47145–2, and the Superior Court in Marsten v. Mutual of Enumclaw Insurance Company, No. 47202–5.

ROSELLINI, STAFFORD, UTTER, and DIMMICK, JJ., and HUNTER, J. Pro Tem., concur.

DOLLIVER, J. (concurring)—Just as the analysis of the majority has changed since *Wiscomb* I, 95 Wn.2d 373, 622 P.2d 1234 (1980), so will my response be different. If the majority had used the same rationale as in *Wiscomb* I, I would have continued to dissent. It did not, nor will I.

While I continue to uphold the freedom of contract inherent in exclusion clauses, I am persuaded that an exclusion clause which denies coverage to the family of the insured is against the public policy of Washington. Therefore, I concur in the opinion of the majority.

Two additional comments: (1) As observed by the Court of Appeals in *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 25 Wn. App. 841, 611 P.2d 1304 (1980), the argument used to justify the family exclusion clause has been the fear of intrafamily insurance collusion and fraud. The justification for this concern, if the concern ever existed, has been completely vitiated. *See Borst v. Borst,* 41 Wn.2d 642, 251 P.2d 149 (1952); *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972). When the reason for the rule has vanished, the rule should be changed. *See Baker v. Seattle,* 79 Wn.2d 198, 200–01, 484 P.2d 405 (1971).

(2) The majority eloquently states the heavy dependence on the automobile by families in our day and the concern that they not be innocent victims. I disagree with the view of the majority that the insured could contract for an automobile insurance policy which would exclude other family members. If the reason for the public policy against the family exclusion clause is to protect innocent victims, they need to be protected against a penurious or unthinking

head of the family as well as the underwriting policies of an insurance company.

BRACHTENBACH, C.J., concurs with DOLLIVER, J.