[No. 18907-7-I.  Division One.  July 27, 1987.]

CONTINENTAL CASUALTY COMPANY, *Respondent,* v. WELTON WEAVER, ET AL, *Defendants,* KATHY DAHLMAN, ET AL, *as Executors, Appellants,* UNITED PACIFIC/RELIANCE INSURANCE COMPANY, ET AL, *Respondents.*

*Daniel W. Unti* and *Carney, Stephenson, Badley, Smith, Mueller & Spellman,* for appellants.

*Craig L. McIvor* and *Lee, Smart, Cook, Martin & Patterson,* for respondent Continental Casualty Co.

*James M. Beecher* and *Hackett, Beecher & Hart,* for respondents United Pacific/Reliance Insurance Co., et al.

RINGOLD, J.—Following commencement of a wrongful death action against Welton Weaver, Continental Casualty Company instituted this declaratory action.[1] The Court granted a summary judgment order that Weaver was not among those persons permitted to drive a car under a rental agreement and that neither Avis nor Continental was

---

[1]The actual sequence was that Continental sought declaratory relief, naming Weaver, Christianson, and the Dahlmans as defendants. The Dahlmans then filed third party claims against United Pacific/Reliance Insurance Company. Roger Dahlman had an underinsured motorist policy with United Pacific/Reliance in the amount of $100,000. Avis then sought declaratory relief by counterclaim.

obliged to defend or indemnify Weaver for the resultant damages. The Dahlmans appeal, claiming: (1) the driver is a member of the lessee's immediate family and is covered under the rental agreement; (2) denial of insurance coverage to an unlicensed driver is contrary to public policy and law; and (3) a permissive user of the car is covered under the rental agreement. We conclude that the trial court properly dismissed the claim.

The facts are not in dispute. The deceased, Roger Dahlman, was struck and killed by an automobile driven by Welton Weaver. Weaver was driving the car of his nonmarital companion, Carol Christianson, who had rented the car from Avis, Inc. At the time of the accident, Weaver's driver's license was suspended. The rental contract between Avis and Christianson specified who, other than the lessee, could drive the car:

> Who else may drive the car. Only someone in my immediate family who permanently lives with me, a regular fellow employee incidental to business duties, or someone who appears at the time of rental and signs this agreement may drive the car but only with my prior permission. In any case, the other driver must be at least 25 years old and must be a capable and licensed driver.

The contract also provided that liability insurance coverage would be provided to the lessee and others permitted by the agreement to use the car:

> Liability insurance. Anyone permitted by this agreement to drive the car will be protected against liability for causing bodily injury, death or property damage up to limits of coverage of $100,000 for each person . . . Such coverage will be provided by . . . [Avis] according to the terms of a standard automobile liability insurance policy. If permitted by law . . . [Avis] can provide coverage under a certificate of self–insurance together with or instead of a policy from an insurance company . . .

In keeping with this provision, Avis obtained both a certificate of self–insurance and insurance coverage from its insurer, Continental Casualty Company.

## Is Weaver Entitled to Coverage Under the Policy?
### Immediate Family

The Dahlmans contend Weaver is a permanent member of the lessee's (Christianson's) immediate family. As such, Weaver is a permitted user of the rental car and therefore qualified for Avis' blanket insurance coverage. Continental contends, and the trial court agreed, that Weaver is not a permanent member of Christianson's immediate family as he is not related to her by blood or marriage. The Dahlmans maintain that the trial court erred in failing to find that the term "immediate family" is ambiguous, and that Weaver and Christianson constituted an "immediate family". They had a 4–year relationship, holding themselves out to others as a married couple, shared all expenses associated with the joint maintenance of their home, maintained a joint bank account and were supported by Weaver as Christianson worked only part time.

■ In construing the language of a contract, if two reasonable and fair interpretations are possible, an ambiguity exists. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 484, 687 P.2d 1139 (1984); *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 631 P.2d 947 (1981). Ambiguities need not be interpreted the same when they are used to extend coverage rather than to except coverage due to the rule of strict construction against the insurer. "It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. This rule applies with added force in the case of exceptions and limitations to the policy's coverage." *McDonald*, at 913 (quoting *Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 86 Wn.2d 641, 650, 548 P.2d 302 (1976)). Clear and unambiguous language, however, is not to be modified under the guise of construing the policy. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 707 P.2d 125 (1985).

An insurance contract should be interpreted according to the way it would be understood by the average insurance purchaser. *Emerson*, at 480. "The terms of an insurance

policy must be understood in their plain, ordinary and popular sense." *Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 670, 689 P.2d 68 (1984).

The Dahlmans rely on *Fisher v. Hodge,* 162 Conn. 363, 294 A.2d 577, 80 A.L.R.3d 1164 (1972), contending that the term "immediate family" is ambiguous. In construing an automobile liability policy, the Connecticut court held that since the term was subject to varying interpretations, it should be construed against the leasing corporation that drew up the rental agreement and found that the brother of the lessee was not contractually prohibited from using the car. The court viewed with favor the trial court's reliance on Webster's Dictionary's definition of family as "a group of common ancestry" (as opposed to "a group of persons living under one roof"), but noted that the use of the word "immediate" is problematic when family is defined as blood relatives or common ancestry as that excludes spouses from family membership. Alternatively, the court found that a Connecticut omnibus statute imposed liability under the circumstances because the brother used the car with the lessee's permission.

Our Supreme Court has construed the terms "household" and "family" and noted that "family" "conveys the notion of some relationship—blood or otherwise" and stated that "[i]n its most common use, the word implies father, mother and children—immediate blood relatives; but the word is also used to designate many other and extended relationships." *Collins v. Northwest Cas. Co.,* 180 Wash. 347, 352, 39 P.2d 986, 97 A.L.R. 1235 (1935).

No case has been found in which the Washington courts have construed the term "immediate family" in insurance contracts. In construing "immediate family" in the context of the tort of outrage, this court recently held that boys raised by the deceased who were neither adopted nor actually his stepchildren were not proper parties to maintain a suit as they did not come within the definition. The court stated:

If we were to define the class of people who may bring this action to include the . . . [boys], we would include within the definition of immediate family members not only spouses, children, stepchildren, parents and siblings, but also individuals who are *like* spouses, children, stepchildren, parents or siblings. Such an interpretation would be so ambiguous as to limit the class of plaintiffs who could assert a claim . . . only by the imagination of counsel drafting the pleadings.

*Strickland v. Deaconess Hosp.* 47 Wn. App. 262, 269–70, 735 P.2d 74 (1987).

█ No case has been cited nor have we found any case in which two unrelated persons cohabiting in a nonmarital relationship have been held to be members of an immediate family. *See generally* 93 A.L.R.3d 420, § 12. No ambiguity exists as to the common meaning of the term "immediate family." The trial court's finding was correct.

## Unlicensed Driver

It is undisputed that Weaver was not a licensed driver at the time of the accident, contrary to the express terms of the rental agreement that any other driver must be licensed. The Dahlmans argue that denying insurance coverage on this basis is contrary to the public policy and law of Washington. This contention is without merit.

█ Broad exclusions of coverage are permissible and have been upheld when the nature of the insurer's risk is altered by factors not contemplated in the computation of premiums, and when the exclusion is spelled out for the policyholder in clear and unmistakable language. *Grange Ins. Ass'n v. MacKenzie,* 37 Wn. App. 703, 683 P.2d 221, *aff'd,* 103 Wn.2d 708, 694 P.2d 1087 (1985). Insurers have the right to restrict the operation of insured vehicles to persons who are legally qualified under state laws to operate automobiles; such provisions are routinely upheld as reasonable and not a violation of public policy. *See* 6C J. Appleman, *Insurance* § 4401 n.6, 11. Washington courts have upheld coverage exclusions for drivers under age 25, *St. Paul Fire & Marine Ins. Co. v. Circle Bar J Boys'*

*Ranch, Inc.,* 1 Wn. App. 377, 461 P.2d 567 (1969), and for any driver other than the named insured or a member of his family. *Barkwill v. Englen,* 57 Wn.2d 545, 358 P.2d 317 (1961). In both cases the courts held that during the time a vehicle is operated by one specifically prohibited from doing so by the express terms of the contract, the insurance coverage is suspended.

In *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982), the court struck down as against public policy a family or household exclusion clause in an automobile liability policy, as such clauses prevent innocent victims from receiving financial protection for no meritorious reason, but noted its previous rulings upholding exclusions which "focused on the increased risks attendant with operation of the vehicle by one other than a person the insurer had agreed to insure. These exclusions are valid because they are directed at the driver—the party who is or may be negligent." *Wiscomb,* at 209.

Exclusion of unlicensed drivers in auto liability policies is a valid contractual provision and is not against public policy. As Weaver was unlicensed, the policy coverage was suspended at the time he operated the rented vehicle.

### ARE PERMISSIVE USERS ENTITLED TO COVERAGE BY STATUTE OR AS A MATTER OF PUBLIC POLICY?

■ The Dahlmans, relying on *Mission Ins. Co. v. Guarantee Ins. Co.,* 37 Wn. App. 695, 683 P.2d 215 (1984), also argue that insurance coverage of Weaver as a permissive user of the car is mandated by statute and public policy. They contend that an omnibus clause extending coverage to permissive users is an absolute requirement under Washington law. Reliance on *Mission* is misplaced as *Mission* concerns the interpretation of a contract under the financial responsibility act (FRA), RCW 46.29.010 *et. seq.,* which requires an omnibus clause. RCW 46.29.490(2)(b). The FRA applies only to drivers who have either caused an accident or have been convicted of certain serious moving

violations and does not apply to the case at bench. RCW 46.29.060, .250. The FRA does not mandate the requirements for all liability policies issued in Washington. The statutory requirements concerning insurance contracts are found in RCW 48.18.

The Dahlmans further assert that the requirement for omnibus coverage should be extended on public policy grounds to all auto liability policies, not just those covered by the FRA. This argument was expressly rejected in *Royse v. Boldt*, 80 Wn.2d 44, 46–47, 491 P.2d 644 (1971) (quoting *Barkwill v. Englen,* at 548):

> It is not the function of the judiciary of this state to determine public policy as it relates to this subject. That function rests exclusively with the legislative branch of our government. Our legislature has not enacted a compulsory financial responsibility law applicable to the owners and operators of motor vehicles [who are not, by statutory provision, required to submit "proof of financial responsibility for the future"]. Appellants' request for such legislation and the pronouncement of public policy should be addressed to the legislature.

Thus, this contention must be addressed to the Legislature.

Finally the record does not substantiate Dahlman's contention that Weaver was a permissive user of the car. Christianson stated in her deposition that Weaver "knew he wasn't supposed to drive . . . especially that [rental] car." Weaver was asked in his deposition if Christianson said he could use the rental car. He replied: "No." The factual basis for asserting that Weaver was operating the vehicle with Christianson's permission fails.

The judgment is affirmed.

SCHOLFIELD, C.J., and WEBSTER, J., concur.