[No. 25127–9–I.   Division One.   November 26, 1990.]

PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY, *Respondent*, v. THE HERTZ CORPORATION, *Appellant*.

642

*Craig R. Watson, Deborah L. Carstens, Thomas R. Merrick,* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman,* for appellant.

*Sidney R. Snyder, Jr., Ronald S. Dinning,* and *Merrick, Hofstedt & Lindsey,* for respondent.

GROSSE, J.—Public Employees Mutual Insurance Company (PEMCO) filed a declaratory judgment action against the Hertz Corporation (Hertz) contending that a Hertz Rental Agreement (Agreement) provided primary liability coverage and that the Agreement's prohibited use clause was unconscionable and violated public policy. On cross motions for summary judgment, the trial court granted PEMCO's motion. We reverse.

On October 21, 1988, Rodney Dillaman rented an automobile from Hertz. He signed a rental agreement that provided liability protection for accidents that occurred while using the car as permitted by the Agreement. The liability coverage was automatically included when the car was rented. The Agreement described the liability protection in detail on the back. Prohibited uses of the vehicle were also outlined on the back side of the Agreement in a separate section and included use by anyone under the influence of alcohol.

Dillaman was intoxicated when he was in an accident while driving the rental car. When the driver of the other car involved in the accident sued Dillaman, he tendered defense of the action to PEMCO, his personal insurer. PEMCO then filed the declaratory judgment action against Hertz alleging that the liability coverage in the Agreement covered the accident and that PEMCO's policy provided only excess coverage.

PEMCO moved for summary judgment asserting that the intoxication exclusion in the Agreement is unenforceable and that the Hertz liability coverage is primary. Hertz filed a cross motion for summary judgment and countered that Dillaman's accident is not covered because he failed to comply with the terms of the Agreement. The trial court granted PEMCO's motion, ruling that the Agreement provided primary coverage and that PEMCO's coverage is excess.

## PUBLIC POLICY

Hertz argues that the prohibited use clause does not violate any statutory provision or any public policy. Washington courts have invalidated or limited exclusionary language in insurance contracts that are contrary to public policy and statute. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982); *Grange Ins. Ass'n v. Hubbard*, 35 Wn. App. 407, 667 P.2d 121, *review denied*, 100 Wn.2d 1023 (1983); *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972). Otherwise, courts have upheld exclusions and allowed insurers to limit their contractual liability. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984); *Royse v. Boldt*, 80 Wn.2d 44, 491 P.2d 644 (1971); *St. Paul Fire & Marine Ins. Co. v. Circle Bar J Boys' Ranch, Inc.*, 1 Wn. App. 377, 461 P.2d 567 (1969), *review denied*, 77 Wn.2d 962 (1970). In deciding whether to invalidate an insurance provision, the courts look to statutes to identify public policy. *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 343, 738 P.2d 251 (1987).

Hertz claims that the intoxication exclusion does not violate any statutory provisions of the insurance code, but PEMCO counters that the public policy of the Washington financial responsibility act (FRA) prohibits the intoxication exclusion. RCW 46.29 *et seq.* In *Wiscomb*, the Supreme Court stated:

> [T]he statute [FRA] creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others.

*Wiscomb*, 97 Wn.2d at 206. Hertz argues that as a self-insurer the provisions of the FRA do not apply. RCW 46.29.080(5).[1]

■ ■ But even if the policy of the FRA applied here, the prohibited use exclusion is not the kind of provision that violates public policy. Previously, this court has limited the scope of the FRA and refused to apply the public policy of the FRA to a car rental agency's insurance policy. *Continental Cas. Co. v. Weaver*, 48 Wn. App. 607, 613, 739 P.2d 1192 (1987). And, in a review of Washington decisions on exclusionary insurance clauses, the Supreme Court recently noted:

> Moreover, exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason.

*Eurick*, 108 Wn.2d at 343–44. In our view, the prohibited use clause in this case directly relates to an increased risk on the part of the insurer.

The case at bar is similar to *Weaver*, where the court held that a car rental agreement limiting liability coverage

---

[1]RCW 46.29.080(5):

    The requirements as to security and suspension in this chapter shall not apply:

    . . . .

    (5) To any person qualifying as a self–insurer under RCW 46.29.630 or to any person operating a vehicle for such self–insurer[.]

We are inclined to the view that this language does not support the Hertz contention. However, we do not reach the issue in this opinion.

to licensed drivers did not violate public policy. Although PEMCO attempts to distinguish the case by claiming *Weaver* dealt with who used the rental car, not how the car was used, this difference is not critical. The *Weaver* analysis focuses on the nature of the insurer's risk. The use of a rental vehicle while intoxicated alters the nature of the insurer's risk to the same effect as the exclusion for unlicensed drivers in *Weaver*, 48 Wn. App. at 612. Since the nature of the insurer's risk was altered, we hold that the prohibited use clause does not violate public policy.

PEMCO argues that none of the cases cited by Hertz that uphold exclusionary clauses focused on the insured's ability to operate the vehicle. *See Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 694 P.2d 1087 (1985); *Eurick v. Pemco Ins. Co., supra; Lovato v. Liberty Mut. Fire Ins. Co.*, 109 Wn.2d 43, 742 P.2d 1242 (1987). However, in each case the exclusion was related to the critical element, the increased risk faced by the insurer, and the Supreme Court upheld each of the exclusions. Moreover, we will not rely on the out–of–state cases cited by PEMCO that hold similar exclusionary clauses violative of public policy because the results in those cases are grounded on specific state statutes. *See Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21 (Mo. Ct. App. 1982); *Allstate Ins. Co. v. Royal Globe Ins. Co.*, 195 N.J. Super. 598, 481 A.2d 298 (1984); *Tom Sawyer Country Day Sch. v. Providence Wash. Ins. Co.*, 108 A.D.2d 810, 485 N.Y.S.2d 126 (1985). The prohibited use exclusion in the Hertz agreement does not violate the public policy of this State.

### UNCONSCIONABILITY

■ Hertz argues that the trial court erred in declaring the prohibited use clause unconscionable. The Washington Supreme Court defined unconscionability as follows:

Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one–sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract. In *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445 (D.C.

Cir. 1965), the court pronounced that procedural unconsciona-
bility was best described as a lack of "meaningful choice." In
discussing the various factors to be considered in determining
whether a meaningful choice is present, the court noted that
consideration must be given to "all the circumstances sur-
rounding the transaction," including "[t]he manner in which
the contract was entered," whether each party had "a reason-
able opportunity to understand the terms of the contract," and
whether "the important terms [were] hidden in a maze of fine
print . . ." *Williams v. Walker–Thomas Furniture Co., supra*
at 449[.]

(Citation omitted.) *Schroeder v. Fageol Motors, Inc.,* 86
Wn.2d 256, 260, 544 P.2d 20 (1975). Recently, *Schroeder*
was cited with approval in *American Nursery Prods., Inc.
v. Indian Wells Orchards,* 115 Wn.2d 217, 223, 797 P.2d
477 (1990).

Since no Washington cases discuss the doctrine of proce-
dural unconscionability in the context of car rental agree-
ments, PEMCO urges this court to apply several out–of–
state cases.[2] Three cases provide insight on the issue of
unconscionability, although all three involve an elective
collision or damage waiver provision selected by the insured
that was substantially limited elsewhere in the rental
agreement.

*Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo. 1986) pro-
vides the most comprehensive treatment of the subject of
procedural unconscionability in the present context. There,
without knowing about the exclusion, the lessee had
selected the optional damage waiver provision subject to an
exclusion if the vehicle was damaged while the operator was
driving while under the influence of alcohol. The Colorado
Supreme Court held that the provision was an unconscio-
nable restriction and unenforceable. *Davis,* 712 P.2d at 992.
The *Davis* court determined that the doctrine of uncon-
scionability applied where overreaching was present, as evi-
denced by inequality in bargaining power, or by the

---

[2]We believe that the question of substantive unconscionability is subsumed in
our holding that the exclusionary clause does not violate public policy. *See Amer-
ican Nursery Prods., Inc. v. Indian Wells Orchards,* 115 Wn.2d 217, 797 P.2d 477
(1990).

absence of meaningful choice involving a contract term that was unreasonable to the party seeking to avoid the provision. The court identified several factors to be considered in applying the doctrine of unconscionability: (1) the use of a standardized contract between parties of unequal bargaining power, (2) the existence of a lack of opportunity to become familiar with terms before signing, (3) the use of fine print in the particular clause, (4) the absence of evidence that the provision was commercially reasonable or reasonably anticipated, (5) unfair terms, (6) the relationship of the parties including assent, unfair surprise and notice, and (7) the overall circumstances of the contract. *Davis,* 712 P.2d at 991. Considering all of these factors, the court found that the agreement there at issue was on a take it or leave it basis, the small print and design of the form discouraged reading the clause on the back of the document, and the exclusion was not pointed out by the lessor, although the lessor did identify other exclusions. Based on these factors the court held the intoxication clause unenforceable.

In *Val Preda Leasing, Inc. v. Rodriguez,* 149 Vt. 129, 131, 540 A.2d 648 (1987), the Vermont Supreme Court declined to enforce an exclusion to a collision damage waiver provision that limited use of the vehicle to a person "who is not sufficiently alert or capable of properly or safely driving vehicle" because the effect of the limitation was to provide coverage only when the driver was not at fault. Because the limitation was not readily apparent when the rental agreement was read the court held the provision was unconscionable.

The Nevada Supreme Court refused to enforce a clause that excluded a limitation on collision damage if the driver of the rented vehicle was in violation of *any* traffic laws. *Automobile Leasing & Rental, Inc. v. Thomas,* 100 Nev. 261, 679 P.2d 1269 (1984). The court found the limitation misleading since the exclusion did not appear on the face of the agreement or from a simple reading of the reverse side.

In both *Val Preda* and *Thomas,* the courts found the terms were substantively unfair.

■ While there is nothing inconsistent with Washington law inherent in the analysis of any of the three cases discussed above, *see Schroeder v. Fageol Motors, Inc., supra,* it is not the law of this jurisdiction that all provisions in a contract *must* be specifically bargained for, or that the presence of small print in the context of a standard form agreement *necessarily* leads to a finding of unconscionability. *See Lyall v. DeYoung,* 42 Wn. App. 252, 711 P.2d 356 (1985), *review denied,* 105 Wn.2d 1009 (1986). In addition, this case differs substantially on its facts from those discussed above.

First, Dillaman had not elected to purchase additional coverage—the third party liability coverage was integral to the Agreement and the cost included in the price of the contract. Second, the face of the Agreement made specific reference to "liability protection limits provided per paragraph 10 unless other limits are shown here," and this provision was just above the signature block for the Agreement and the words were in all capital letters. Third, a reader curious as to "liability protection" inspecting the reverse side of the form would discover the following:

10. LIABILITY PROTECTION.

(a) Hertz will indemnify, hold harmless, and defend You and any Authorized Operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERATORS' FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU OR THEM. For bodily injury the limits of this protection are $25,000 for each person, $50,000 for each accident, and for property damage $25,000 for each accident, unless other limits are shown on the Front (not to exceed $100,000 per person, and $300,000 each accident and $25,000 for property damage for each accident) which accident results from the use of the Car as permitted by this Agreement. This protection shall conform to the basic requirements of any applicable "No Fault" law BUT DOES NOT INCLUDE "UNINSURED MOTORIST", "UNDERINSURED MOTORISTS", SUPPLEMENTARY "NO FAULT" OR ANY

OTHER OPTIONAL COVERAGE. TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU HEREBY REJECT THE INCLUSION OF ANY SUCH COVERAGE. In the event that such coverage is imposed, by operation of law, for the benefit of persons other than You or any Authorized Operators, then the limits of such coverage shall be the minimum required by the law of the jurisdiction in which the accident occurred. Hertz warrants that the protection described in this paragraph is primary with respect to any insurance coverage You or any Authorized Operators may have. THIS PROTECTION IS VOID IN MEXICO.

(b) You and all Authorized Operators will indemnify and hold Hertz, its agents and employees harmless from and against any loss, liability and expense in excess of the limits of protection provided for above, arising from the use of the Car by You or any Authorized Operators or with Your or their permission.

Fourth, directly opposite the column containing paragraph 10, to the left, is paragraph 5 pertaining to responsibility for loss or damage to the car, that provides:

5. PROHIBITED USE OF THE CAR.
THE CAR MAY NOT BE USED: BY ANYONE UNDER THE INFLUENCE OF ALCOHOL OR OTHER INTOXICANTS, SUCH AS DRUGS; FOR ANY ILLEGAL PURPOSE, SUCH AS ILLEGAL TRANSPORTATION OF PERSONS, DRUGS, OR CONTRABAND; TO CARRY PERSONS OR PROPERTY FOR HIRE; TO TOW OR PUSH ANYTHING; IN A RACE, TEST, OR CONTEST; TO TEACH DRIVING; TO CARRY PERSONS OUTSIDE THE PASSENGER COMPARTMENT; IF IT IS LOADED BEYOND ITS RATED CAPACITY; IF IT IS OBTAINED FROM HERTZ BY FRAUD OR MISREPRESENTATION; IN MEXICO; OR OFF OF PAVED ROADS. IF THE CAR IS OBTAINED OR USED IN VIOLATION OF THIS AGREEMENT OR, IF YOU REMOVE OR ATTEMPT TO REMOVE THE CAR FROM THE UNITED STATES OR CANADA, LDW, PAI & PEC, AND ALL LIABILITY PROTECTION, INCLUDING LIS, ARE VOID AND YOU MAY BE RESPONSIBLE FOR ALL LOSS OF, DAMAGE TO OR CONNECTED WITH THE CAR, REGARDLESS OF CAUSE.

This paragraph is contained within a box that sets it off from the rest of the lefthand column along with paragraph 4 and as can be seen above is entirely in capital letters.

■ We believe that the above factors distinguish this case from the previously discussed elective damage waiver cases and militate against finding the Hertz contract provision procedurally unconscionable. While this was a standardized contract between parties of unequal bargaining power, no evidence showed that Dillaman lacked opportunity to become familiar with the terms. Certainly there is no contention here that he was forced or rushed to sign. Further, the face of the Agreement calls attention to its essential terms[3] and there was no use of fine print. It appears to this court that all of the essential provisions are in a similarly sized type face with many printed in all capital letters. We believe that it is commercially reasonable for a car rental company to prohibit the use of its vehicles by an intoxicated driver. Not only is such a provision quite different in kind from a prohibition on mere negligent driving, but it should be anticipated in any jurisdiction, such as this one, with strong policies and penalties prohibiting driving while under the influence. *See* RCW 46.61-.500–.535. The terms of this Agreement are not unfair. As to the relationship of the parties, if a driver does not assent all he need do is provide his own liability insurance (now required by law in this state). A prospective renter of a Hertz vehicle is not faced with a take it or leave it choice with regard to renting a vehicle. He can rent the vehicle and comply with one of the most important rules of the road in Washington: refrain from driving while intoxicated, or he can rent the vehicle but procure his own insurance with respect to liability to third parties. These are not unfair choices and are not unfair restrictions.

---

[3]We do note that Hertz could clarify the terms and exclusions should it choose. It need look no further than the provisions in the Uniform Commercial Code with respect to warranty exclusions for guidance.

We do not express any opinion as to the result in a case involving this contract where the issue is whether the exclusion applies to any one of the provisions for elective coverage.

The judgment of the trial court is reversed and the matter remanded for entry of a judgment in favor of Hertz.

COLEMAN, C.J., and PEKELIS, J., concur.

Review denied at 116 Wn.2d 1013 (1991).