[No. 32778-0-I.  Division One.  April 11, 1994.]

PLANET INSURANCE COMPANY, *Respondent,* v. KWOK-HO WONG, ET AL, *Defendants,* EMANOIL MURESAN, ET AL, *Appellants.*

*Michael E. Nelson* and *Nelson, Anderson & Krafchick,* for appellants.

*Rob J. Crichton* and *Keller Rohrback,* for respondent.

SCHOLFIELD, J. — Emanoil and Rodica Muresan appeal from an order granting summary judgment in favor of Planet Insurance Company. The Muresans argue that Planet acted in bad faith while performing its duty to defend under a reservation of rights and that they have the right to enforce Planet's duty of good faith owed to its insured. The Muresans also argue that Planet's prohibited use clause is void as against public policy and is unenforceable under the Washington doctrine of procedural unconscionability. We affirm.

On July 1, 1991, Siu Cheung Ng a.k.a. Samuel Ng, then 21 years old, entered into an automobile rental agreement with Pacific Northwest Rental & Leasing, Inc., d.b.a. Thrifty Car Rental. Thrifty was insured by Planet Insurance Company.

The front page of the rental agreement states that there is "No ADDITIONAL DRIVER". It also provides that the "[v]ehicle is to be operated only by renter or any additional renter signing below". The back side of the rental agreement provides as follows:

PROHIBITED USES OF VEHICLE. Vehicle shall NOT, under any circumstances, be used for any of following purposes or under any of following conditions, and any such use is WITHOUT THRIFTY'S PERMISSION:

(a) By anyone without first obtaining Thrifty's written consent.

(b) By anyone under age 21.

. . . .

PROHIBITED USE OF VEHICLE VIOLATES THIS AGREEMENT, VOIDS All LIABILITY AND OTHER INSURANCE COVERAGE (WHERE PERMITTED BY LAW) . . .[.]

The insurance policy issued by Planet to Thrifty provides the following exclusion in its auto rental endorsement:

This policy does not apply:

(a) to the rentee while such auto is used or operated in violation of the terms and conditions of the rental agreement under which such auto is rented;

. . . .

. . . "Rentee" means any person . . . using a covered **auto** for a charge or fee . . .[.]

Ng signed the agreement, received the rental vehicle, and subsequently loaned the car to a 19-year-old friend, Kwok-Ho Wong, a.k.a. Kenny Wong. Wong had not been identified on the rental agreement as an additional driver.

On July 4, 1991, while driving the rental vehicle, Wong rear-ended the Muresans, causing them injury. On July 19, 1991, Planet sent Wong a letter agreeing to defend him under a full reservation of rights.

On October 24, 1991, the Muresans commenced an action for personal injuries. Defense counsel on behalf of Wong filed its notice of appearance on October 31, 1991.

Planet commenced the instant declaratory action on December 18, 1992, seeking an order that Wong had no coverage for the claims asserted in the personal injury action. An order of default was entered in the declaratory judgment action against Wong on February 22, 1993.

Planet moved for summary judgment on the ground that Wong's use of the rental vehicle was not covered by the policy because Wong was an underage driver, and his use of the vehicle was without Thrifty's permission. On April 14, 1993, the court granted Planet's motion, ruling that Wong was not covered under the policy. On May 5, 1993, the court denied the Muresans' motion for reconsideration.

This appeal timely followed.

### LACK OF ASSIGNMENT

The Muresans first contend that there exist genuine issues of material fact as to whether Planet acted in bad faith while defending Wong under a reservation of rights because Planet did not thoroughly investigate the Muresans' injuries, Planet delayed settlement despite assertions by its adjuster that settlement was probable, and Planet repeatedly exhibited greater concern for its financial interests than for its insured's risk. The Muresans also argue that they have the right to enforce Planet's duty of good faith owed to Wong, its insured, via an assignment of rights. Planet responds that the court properly granted summary judg-

ment and that the Muresans lack standing to assert a breach of Planet's fiduciary duties owed to Wong.

■ An appellate court resolving a motion for summary judgment must consider all facts submitted, engaging in the same inquiry as the trial court. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 120 Wn.2d 573, 580, 844 P.2d 428 (1993). An order of summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Marincovich v. Tarabochia, supra* at 274. The moving party bears the burden of showing the absence of an issue of material fact. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 395, 823 P.2d 499 (1992).

Where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage. *Safeco Ins. Co. of Am. v. Butler, supra* at 392. An injured third party has no right of action against an insurance company for bad faith. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 393, 715 P.2d 1133 (1986). However, an insured may assign his or her rights to a bad faith claim to a third party. *Safeco Ins. Co. of Am. v. Butler, supra* at 399.

In *Safeco Ins. Co. of Am. v. Butler, supra*, the insureds, the Butlers, had a potential bad faith claim against Safeco. They assigned the claim to a third party, the Zenkers. The court held that the Butlers had the power to assign their rights under the policy without Safeco's consent. The Zenkers acquired all of the Butlers' rights as they existed at the time of assignment. *Safeco Ins. Co. of Am. v. Butler, supra* at 399.

■ Here, Wong did not assign to the Muresans any claim of bad faith against Planet. Thus, the Muresans are simply third parties with no right of action against Planet for a

claim of bad faith. *See Tank v. State Farm Fire & Cas. Co.,* *supra* at 393.

The Muresans' counsel argues that it would be unfair to enforce the requirement that they obtain an assignment because the case had not reached a point where counsel could force an assignment through supplementary proceedings. This claim has no merit. The Muresans cite no authority in support of this argument. Wong has apparently been unwilling to make the assignment and, without it, the Muresans have no standing to proceed against Planet.

### FINANCIAL RESPONSIBILITY ACT

The Muresans next contend that the prohibited use clause is void as against the public policy objectives of Washington's Financial Responsibility Act, RCW 46.29. Planet responds that the prohibited use clause does not violate any statutory provision or public policy because the exclusions are related to increased risks.

A prohibited use clause does not violate public policy where the clause directly relates to an increased risk on the part of the insurer. *Public Employees Mut. Ins. Co. v. Hertz Corp.*, 59 Wn. App. 641, 644-45, 800 P.2d 831 (1990) (hereinafter *Pemco), review denied,* 116 Wn.2d 1013 (1991). In *Pemco*, Rodney Dillaman rented an automobile from Hertz. He signed a rental agreement that provided liability protection for accidents that occurred while using the car as permitted by the agreement. Prohibited uses of the vehicle were outlined on the back side of the agreement and included use by anyone under the influence of alcohol. *Pemco*, at 642.

Dillaman was intoxicated when he was in an accident while driving the rental car. When the driver of the other car involved in the accident sued Dillaman, he tendered defense of the action to PEMCO, his personal insurer. PEMCO then filed a declaratory judgment action against Hertz, alleging that the liability coverage in the Hertz agreement provided primary liability coverage and that the intoxication exclusion in the agreement was unconscionable and violated public policy. *Pemco*, at 642-43.

In holding that the intoxication exclusion was enforceable, the court noted the following recent statement by the Supreme Court:

> [E]xclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason.

*Pemco*, at 644 (quoting *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 343-44, 738 P.2d 251 (1987)). *See also Continental Cas. Co. v. Weaver*, 48 Wn. App. 607, 613, 739 P.2d 1192 (1987).

The *Pemco* court reasoned that the use of a rental vehicle while intoxicated altered the nature of the insurer's risk, and because the nature of the insurer's risk was altered, the prohibited use clause did not violate the public policy of this state. *Pemco*, at 645.

The prohibited uses at issue here are that Wong was an unauthorized driver and he was not yet 21. With regard to unauthorized use, there is evidence in the record that where a driver who has not received prior authorization obtains custody of one of Thrifty's rental cars, there is an increased risk of theft, of the car not being returned, of the car being taken to an unauthorized location — which places the automobile at greater risk — and of the car being used for unauthorized purposes. In addition, it is Thrifty's experience that it has more difficulty recovering against unauthorized drivers for damages resulting from their actions, thereby leading to an enhanced risk of exposure to Thrifty and its insurer. Similarly, in Thrifty's experience underage drivers also lead to an increased risk of loss.

This evidence indicates that the use of a rental vehicle by Wong, who was unauthorized and underage, altered the nature of the insurer's risk. Because the nature of the insurer's risk was altered, we hold that the prohibited use clause does not violate the public policy of this state.

### PROCEDURAL UNCONSCIONABILITY

The Muresans further contend that the prohibited use clause is unenforceable under the doctrine of procedural

unconscionability. Planet responds that the prohibited use exclusions are not procedurally unconscionable.

■ Unconscionability is defined as follows:

> Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract. In *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965), the court pronounced that procedural unconscionability was best described as a lack of "meaningful choice." In discussing the various factors to be considered in determining whether a meaningful choice is present, the court noted that consideration must be given to "all the circumstances surrounding the transaction," including "[t]he manner in which the contract was entered," whether each party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print . . ." *Williams v. Walker-Thomas Furniture Co.*, *supra* at 449[.]

(Citation omitted.) *Pemco*, at 645-46 (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975)). *See also American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990).

In *Pemco*, the court found that the provision in the rental car agreement prohibiting the use of alcohol was not procedurally unconscionable. *Pemco*, at 650. In upholding the clause, the court considered the following factors: (1) Dillaman had not elected to purchase additional coverage — the third party liability coverage was integral to the agreement and the cost was included in the price of the contract; (2) the face of the agreement made specific reference to " 'liability protection limits provided per paragraph 10 unless other limits are shown here' ", and this provision was just above the signature block for the agreement and the words were in all capital letters; (3) a reader curious as to "'liability protection' " inspecting the reverse side of the form would discover the detailed provisions regarding liability protection; and (4) directly opposite the provisions regarding liability protection, in a box which set it off from the rest of the column, was a provision detailing prohibited uses of the car entirely

in capital letters, the first of which was use by a person under the influence of alcohol. *Pemco*, at 648-49.

The court held that the above factors distinguished *Pemco* from cases holding that policies with terms similar to those at issue in *Pemco* were unfair.[1] *Pemco*, at 650. The court reasoned that while it was a standardized contract between parties of unequal bargaining power, no evidence showed that Dillaman lacked opportunity to become familiar with the terms. There was no contention that Dillaman was forced or rushed to sign. The face of the agreement called attention to its essential terms, and there was no use of fine print. All the essential provisions were in a similarly sized typeface with many printed in all capital letters. *Pemco*, at 650. The court went on to say that it is commercially reasonable for a car rental company to prohibit the use of its vehicles by an intoxicated driver. The terms of the agreement were not unfair. If a driver did not assent, all the driver needed to do was provide his or her own liability insurance. *Pemco*, at 650.

Similarly, here Ng did not elect to purchase additional coverage — the third party liability coverage was integral to the agreement, and the cost was included in the price of the car rental contract. Second, although the face of the agreement does not make specific reference to "liability protection limits", it does provide that "[v]ehicle is to be operated only by renter or any additional renter signing below", and it also specifies, "NO ADDITIONAL DRIVER". It further provides that "[v]ehicle is rented to renter upon terms and conditions on front and back". Third, a renter could readily inspect the reverse side of the form and discover a provision titled, "PROHIBITED USES OF VEHICLE". The first two such uses are as follows: "(a) By anyone without first obtaining Thrifty's written consent[; and] (b) [b]y anyone under age 21". Fourth, below this list in capital letters the agreement states, "PROHIBITED USE OF VEHICLE VIOLATES THIS

---

[1]*Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo. 1986); *Val Preda Leasing, Inc. v. Rodriguez*, 149 Vt. 129, 540 A.2d 648 (1987); *Automobile Leasing & Rental, Inc. v. Thomas*, 100 Nev. 261, 679 P.2d 1269 (1984).

AGREEMENT, VOIDS ALL LIABILITY AND OTHER IN-
SURANCE COVERAGE . . .".

Furthermore, although the contract at issue here is a standardized contract between parties of unequal bargaining power, no evidence shows that Ng lacked opportunity to become familiar with the terms before signing. The face of the agreement indicates "NO ADDITIONAL DRIVER". The essential terms of the contract are printed on the back in similarly sized typeface with many printed in all capital letters. It is commercially reasonable to limit the use of a rental car to the person who has signed the agreement and to persons who have attained age 21. The terms of the agreement are not unfair. And, as to the relationship of the parties, a prospective renter is not faced with a take-it-or-leave-it choice with regard to renting a vehicle. If a driver does not assent to the terms of the agreement, all he or she need do is provide his or her own liability insurance. Thus, the overall circumstances indicate that the clause should not be held unenforceable.

The Muresans attempt to distinguish the present case from *Public Employees Mut. Ins. Co. v. Hertz Corp.*, 59 Wn. App. 641, 644-45, 800 P.2d 831 (1990), *review denied*, 116 Wn.2d 1013 (1991), on the basis that (1) "the front page [of the car rental agreement] does not explain that coverage would be denied if Ng permitted Wong to use the vehicle without Thrifty's consent." Br. of Appellant, at 14-15. They argue that no reference is made on the front page of the car rental agreement to the prohibited use provisions.

Although the face of the document does not refer to all prohibited uses, it states "No ADDITIONAL DRIVER". It also states, "Vehicle is to be operated only by renter or any additional renter signing below". The front of the agreement further provides that "[v]ehicle is rented to renter upon terms and conditions on front and back". This was sufficient to alert Ng that other provisions could be found on the reverse of the agreement. The front page of the agreement need not contain all of the prohibitions and consequences of their breach. Here, enough is set forth on the first page to

alert a reasonably prudent driver to the dangers of an additional driver not listed on the front of the policy.

Second, the Muresans claim that the reverse side of the agreement constitutes a maze of fine print. They argue that on the reverse side of the agreement, unlike *Pemco*, the prohibited uses are not set apart from the rest of the page, nor are they in bold capital letters.

■ Small printing alone does not render a standard agreement unconscionable. *Pemco*, at 648. Furthermore, although the prohibited uses are not set apart, the heading "PROHIBITED USES OF VEHICLE" is in capital letters, and these uses are clearly set forth below. The agreement then provides in capital letters that prohibited use voids all liability and other insurance. Finally, as mentioned above, the face of the agreement states "No Additional Driver".

■ The Muresans also state that there is a question of fact as to whether Ng can even read English.

> Once there has been an initial showing by the party bringing the summary judgment motion that there are no material facts for a jury to decide, the party opposing such motion must respond with more than conclusory allegations, speculation or argumentative assertions of the existence of unresolved factual issues.

(Citation omitted.) *Michelsen v. Boeing Co.*, 63 Wn. App. 917, 920, 826 P.2d 214 (1991). Thus, to withstand the motion for summary judgment the Muresans had to present specific facts to the trial court showing that Ng cannot read English. The only evidence the Muresans offered in support of their contention is that Ng's friend, Yao S. Chen, had difficulty speaking English. Such evidence does not create a genuine issue of material fact as to whether Ng can read English.

Furthermore, evidence exists which indicates that Ng spoke English well. Planet presented the declaration of John Ragan, claim examiner for HCM Corporation, in which he stated that he had a conversation with Ng lasting approximately 15 minutes concerning the circumstances of the accident and his rental from Thrifty. Ragan stated that Ng had a good command of English and his responses exhibited a

thorough comprehension of the points and questions conveyed to him.

Next, the Muresans argue that no indication is given on either the front or the back of the rental agreement "that Wong would forfeit the blanket insurance provided under RCW 46.30.010 AND 46.30.020." Br. of Appellant, at 16.

RCW 46.30.010 provides that:

> By enactment of this chapter it is not the intent of the legislature to modify, amend, or invalidate existing insurance contract terms, conditions, limitations, or exclusions or to preclude insurance companies from using similar terms, conditions, limitations, or exclusions in future contracts.

In addition, the back of the rental agreement states in capital letters that "prohibited use voids all liability and other insurance". Accordingly, Wong should have been on notice that his use of the car in violation of the rental agreement would forfeit the insurance provided under RCW 46.30.010 and .020.

■ Finally, the Muresans attempt to distinguish *Pemco* on the grounds that the driver there was intoxicated, while Wong was merely unauthorized and underage. There is no language in *Pemco* indicating that in determining procedural unconscionability we must look to the severity of the prohibited act. Rather, we must consider the overall circumstances to decide the issue. *See Pemco*, at 645-46.

Accordingly, we find that the prohibited use provisions are not invalid under the doctrine of procedural unconscionability.

We affirm.

WEBSTER, C.J., and COLEMAN, J., concur.

Review granted at 125 Wn. 2d 1008 (1994).