## Val Preda Leasing, Inc., d/b/a Budget Rent a Car of Burlington v. Jesus Rodriguez and Brunswick Corporation

[540 A.2d 648]

No. 86-297

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 24, 1987

*Stevens & Vogl,* Shelburne, for Plaintiff-Appellee.

*James W. Coffrin* of *Pierson, Affolter & Wadhams,* Burlington, for Defendants-Appellants.

**Allen, C.J.** The defendants were found liable after a trial by court for damage to a car rented by Mr. Rodriguez for use in his employment by the codefendant. The defendant fell asleep while driving the car, collided with a telephone pole, and wrecked the car. Under the rental agreement the defendants are liable for damage caused by a violation of the provisions of the agreement, one of which is that the vehicle not be used by anyone not sufficiently alert to drive safely. The trial court determined that Mr. Rodriguez violated this provision by falling asleep while driving and ruled that defendants were liable for the damage to the car. We reverse.

On the face of the rental agreement is a section set off by a black background regarding the option of a "collision damage waiver" (CDW). It reads:

> Renter initials to accept or decline at the daily rate shown for each day or fraction thereof, CDW of renters' responsibility for the first $1000.00 (or other amount as shown below) of accidental collision damage to vehicle, regardless of negligence. Violation of any of the provisions of this agreement makes renter fully liable for damage to vehicle even if renter has paid for CDW. See Sections 2, 3 and 8 on reverse side
>
> Amount other
> than $1000.00:    $600.00
>                  (hand written)

Mr. Rodriguez declined the CDW.

On the reverse side of the agreement, there are fourteen numbered sections. Section 8 on the reverse reads:

> Renter is . . . (b) Not responsible for any collision damage to the vehicle if renter has accepted CDW. If renter has declined CDW, renter is responsible for the first $1000.00 (or other amount written on the other side of this Agreement) of collision damage to the vehicle. (c) Liable for reasonable loss of use of and damage to Vehicle, (even if renter has accepted CDW and regardless of anything else stated in No.

8), which is caused by the violation of any of the use restrictions in No. 2.

Section 2 states: "Vehicle shall not be used or operated by any person: . . . (e) who is not sufficiently alert or capable of properly or safely driving vehicle."

Defendants paid $600 to plaintiff, but refused to pay for the remaining damage. This lawsuit followed claiming that Mr. Rodriguez had violated section 2(e) by falling asleep and therefore, under both the CDW section on the face of the agreement and section 8(c) on the back, defendants were liable for the entire damage to the car.

■ Defendants contend that the car rental agreement is ambiguous and unenforceable, because it appears to limit the renter's liability to $600 and at the same time makes the renter liable for the full cost of damage to the car resulting from a violation of the agreement. A contract term is ambiguous when reasonable people could differ as to its interpretation. *Trustees of Net Realty Holding Trust* v. *AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). It is for the court to decide whether a contract term is ambiguous as a matter of law, subject to appellate review. *Id.*

We agree that the trial court correctly held that the agreement is not ambiguous. The first sentence of the CDW section on the face of the contract does not explain the effect of accepting or declining the CDW on the renter's liability for collision damage, and the phrase "regardless of negligence" is confusing. However, the second sentence in this section indicates that the renter is liable for damage caused by a violation of the agreement and refers the reader to the reverse side, which explains the effect of accepting or declining the CDW and also lists all the actions constituting a violation of the agreement. We agree with the trial court that the agreement as a whole appears unambiguous.

■ This does not end our analysis. Defendants argued in the trial court and argue on appeal that the contract is misleading and unenforceable. This argument is more akin to the concept of unconscionability than ambiguity. This is a proper consideration for a court in ruling on an action to enforce a contract. See *Trustees of Net Realty*, 144 Vt. at 248, 476 A.2d at 533 ("[T]he logic of an agreement, without more, is not a proper concern for the court in the absence of public policy considerations, fraud, overreach-

ing, and similar concerns."). We will, therefore, analyze the contract to determine whether enforcing it would be unconscionable.

The contract appears to absolve the renter of liability for damage to the car if the renter purchases the CDW. It limits the renter's liability to $600 if the renter, as Mr. Rodriguez did, declines to purchase the CDW. In effect, the rental company waives the right to seek full compensation from the renter for the cost of accidental collision damage to the vehicle. At the same time that the company provides this waiver, it specifically excepts damage caused by violation of any of the use restrictions delineated in section 2 of the contract. Section 2 contains an extensive list of prohibitions:

Vehicle shall not be used or operated by any person:

(a) Other than Renter or any Additional Driver who is shown on the other side and has Renter's prior permission; or

(b) Who is not a qualified, licensed driver at least 21 years old; or

(c) Who has given BUDGET any false or misleading information; or

(d) Whose driving ability is impaired to any degree by intoxicating liquor or any other substance; or

(e) Who is not sufficiently alert or capable of properly or safely driving Vehicle; or

(f) To transport people or property for compensation; or

(g) To carry hazardous or explosive substances; or

(h) In any race, speed test, training, contest or for any illegal purpose; or

(i) In any abusive, reckless or unlawful manner; or

(j) Who leaves the keys in or does not properly lock up or secure the Vehicle (excluding valet parking situations); or

(k) To propel, push or tow any vehicle or trailer; or

(l) In an off-road use (use on any road or other area that is not hard surfaced and regularly maintained); or

(m) In Mexico, without the prior written permission of BUDGET; or

(n) Who does not know how to drive a stick shift vehicle (if Vehicle has a stick shift transmission); or

(o)  Who should know further use of the Vehicle would cause it damage (warning light on, flat tire, steam rising from engine); or

(p)  Who has more people in the Vehicle than seatbelts.

The effect of the limitations on the waiver is to render the renter liable for virtually all damage caused by the renter. The waiver conceivably could only apply to damage caused by a third party or by some other cause outside the control of the renter.

The contract, however, does not express its meaning in plain terms. The CDW sections refers to "violations of the agreement" rendering the renter liable, then directs the reader's attention to sections 2, 3 and 8 on the reverse side. It is only after reading and digesting those sections that the reader would realize the full import of the limitations on the rental company's waiver.

Similar limitations on collision damage waivers in car rental agreements have been found unenforceable by other courts on the ground that they unconscionably limit the renter's protection for liability for collision damage. The court in *Automobile Leasing & Rental, Inc.* v. *Thomas*, 100 Nev. 261, 679 P.2d 1269 (1984), refused to enforce a collision damage waiver that required the car to be used " 'in conformity with [the] rental agreement.' " *Id.* at 262, 679 P.2d at 1270. The agreement in *Thomas* stated that the car should not be used in an "unlawful manner," as does section 2(i) of this contract. The rental company in *Thomas* argued that the renter was using the car unlawfully when she made an illegal left-hand turn, for which she received a citation, and damaged the car.

> [The rental company's] position is that the "unlawful manner" language should be read to mean that a renter is responsible for negligently caused damage to the vehicle and that the waiver provision does not apply under such circumstances. Under this narrow interpretation, waiver of damage claims by [the rental company] would be in effect only when damage was caused by the fault of one other than the renter.

*Id.* at 263, 679 P.2d at 1270. The court found this limitation on the waiver misleading, because it did not appear on the face of the agreement or from a simple reading of the reverse side. *Id.*

The *Thomas* court analyzed the contract as an "ordinary reader" would: " 'The test to be applied is not what the insurer

intended by his words, but what the ordinary reader and purchaser would have understood them to mean.' " *Id.* at 263, 679 P.2d at 1271 (quoting *Elliott Leases Cars, Inc.* v. *Quigley,* 118 R.I. 321, 326, 373 A.2d 810, 812 (1977)). While the *Quigley* case involved collision insurance, the *Thomas* court found the analysis used in that case applicable to its case involving a collision damage waiver.

Plaintiff seeks to distinguish *Thomas* by arguing that the contract does not impose liability for all damage caused by negligence, but only for Mr. Rodriguez's breach of the contract by falling asleep while driving. In fact, the effects of the contract here and the one in *Thomas* are the same. In both cases, the renter is not held liable for negligence but for breaching the contract which provided restrictions on the use of the car. The use restrictions on the contract here, as in the *Thomas* case, so limit the protection of the $600 limit on liability that the renter is liable in virtually every situation where any fault attributable to the renter contributes to the damage to the vehicle.

The trial court distinguished the contract in *Thomas* from the one involved here on the grounds that the language of the collision damage waiver clause here is clear, whereas the contract in *Thomas* never clearly informed the renter she would be liable for damage she caused. As we noted, the contracts involved are substantially the same: this one refers to damage caused by a "violation" of the agreement while the contract in *Thomas* provided that the car must be used "in conformity" with the agreement.

The court below also found that the clear language referring the reader to sections 2, 3 and 8 on the reverse side of the agreement distinguished this agreement from the contract in *Thomas,* which did not have such clear language. The fact that the collision damage waiver clause made specific reference to the limitations on the reverse of the agreement does not constitute clear, unambiguous language indicating that the renter is absolutely liable for any damage to the vehicle caused by the renter's fault.

The reasoning in *Thomas* was followed in *Davis* v. *M.L.G. Corp.,* 712 P.2d 985 (Colo. 1986). In *Davis,* the face of the car rental agreement included a "physical damage waiver" option but did not mention limitations on the waiver. The reverse side included the explicit statement that if the renter permitted use of the car in violation of paragraph 3, which contained numerous limitations on use, the renter would be liable for all damage to

the vehicle, regardless of whether the renter had accepted the "physical damage waiver." One of the prohibitions on use contained in paragraph 3 of the *Davis* contract, as in section 2(d) of the one before this Court, was on driving the rented car while under the influence of drugs or intoxicants. In *Davis*, the renter stipulated that he had been intoxicated at the time of an accident. The rental company sought to recover the cost of the resulting damage to the rented car.

The *Davis* court again analyzed the language of the agreement as an ordinary reader would understand it. *Davis*, 712 P.2d at 989 (citing *Union County U-Drive It* v. *Blomeley*, 48 N.J. Super. 252, 256, 137 A.2d 428, 430 (1958)). The court concluded, "In short, lessors should know that the simple, highly readable summary of the collision responsibility alternatives will lead an average customer to reasonably conclude that he is protected against most, if not all, risks." *Davis*, 712 P.2d at 992. The court held that the "physical damage waiver" was "significantly restricted in an unconscionable manner" and refused to enforce it. *Id.*

The *Davis* court noted that the analysis in *Thomas* was "buttressed by its consonance with the doctrine of unconscionability." *Id.* at 991. The court examined a number of factors relevant in analyzing the unconscionability of contracts, including unequal bargaining power between the parties, lack of opportunity to read the contract, use of fine print in the contract and the terms of the contract, including substantive unfairness. *Id.* The court found several of the factors present in that case. Here, we note that the factors relevant to unconscionability in the formation of the contract listed by the court in *Davis* were not present. However, we find the terms of the agreement to be substantively unfair.

The average renter would have difficulty in understanding the consequences of the substantial exceptions to the limitation on liability for damage to the car. If the numerous exceptions were given effect, the renter would be liable for damage caused by virtually every type of driver error, including making an illegal left-hand turn, as the renter did in *Thomas*, because that is operating the vehicle in an "unlawful manner" (section 2(i)), driving while intoxicated (section 2(d)), as in *Davis*, or by falling asleep while driving, as is the case here (section 2(c)). The exceptions swallow the protection. The *Blomeley* court noted: "The operation of a motor vehicle can be expected (unfortunately, but, by current experience, inevitably) frequently to involve a variety of more or

less technical violations of the traffic laws." *Blomeley*, 48 N.J. Super. at 256-57, 137 A.2d at 430. Thus, we find that these exceptions significantly restrict the rental company's limitation on the renter's liability for damage to the vehicle in an unexpected and unconscionable manner. See *Davis*, 712 P.2d at 992.

Therefore, we hold that the agreement is unconscionable and unenforceable to the extent that it excepts from the $600 limitation on defendants' liability damage caused by Mr. Rodriguez's violation of the agreement by falling asleep while driving.

*Reversed.*