Thomas J. LAUVETZ, Petitioner,

v.

ALASKA SALES AND SERVICE d/b/a
National Car Rental, John C.
Osborne, Respondents.

No. S–4025.

Supreme Court of Alaska.

Nov. 15, 1991.

Rehearing Denied Feb. 18, 1992.

Sanford M. Gibbs, Hagans, Brown, Gibbs & Moran, Anchorage, for petitioner.

John C. Siemers, Burr, Pease & Kurtz, Anchorage, for respondent, Alaska Sales and Service.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

This matter is before the court on petition for review. By previous order, we agreed to examine the superior court's grant of partial summary judgment against the operator of a rental vehicle in an action against the operator for collision damage to the vehicle. The issue that we address is whether the operator is entitled to the coverage afforded by a collision damage waiver found in the vehicle rental agreement if the operator is intoxicated while operating the vehicle.

I

Vacationers John Osborne and Thomas Lauvetz arrived in Alaska on August 26, 1988. Before leaving Anchorage International Airport, they rented a previously reserved van from Alaska Sales and Service, doing business as National Car Rental (National). Although Osborne rented the vehicle, he listed Lauvetz as an authorized driver. While at the rental desk, Osborne was offered an optional collision damage waiver (CDW), which he accepted, and optional personal accident insurance, which he declined. The CDW added $8.95 per day to the basic daily rate of $70.00.

On the face of the Rental Agreement there is no indication of the scope of the CDW. Directly above the CDW box, in bold face and in the same size type as "Collision Damage Waiver Option," are the words "See Terms and Conditions." The National agent did not inform Osborne and Lauvetz where the terms and conditions could be found. The agent apparently made no representations about the scope of the CDW, nor did the agent indicate that the terms and conditions contained specific exclusions to the CDW.

The terms and conditions of the Rental Agreement were, in fact, on the inside of the travel folder in which the agent placed the Rental Agreement. The right flap of the travel folder opened into three panels containing the terms and conditions. The terms and conditions were printed in black on a white background and were legible. Lauvetz and Osborne did not read the terms and conditions.

Paragraph seven of the terms and conditions concerns the CDW option:

If I [the renter] am involved in an accident or the car sustains collision damage, even from unknown causes, I am responsible for the resulting damages including loss of use, claims processing fees, and administrative charges regardless of fault. This financial responsibility is eliminated if I accept the CDW Option, pay for it, and comply with the Agreement, including all Terms and Conditions. I UNDERSTAND THAT CDW IS NOT INSURANCE. I understand that some automobile insurance policies cover loss and damages to the rental vehicle; that National cannot interpret the terms of my insurance policies; and that it is my responsibility to check with my insurance company and my insurance agent.

If I accept the CDW Option, I agree to pay the charge per day shown on the Rental document for each full or partial day. I understand that CDW does not apply to interior or exterior damage to the Vehicle caused by negligent loading or unloading of baggage or equipment.

The Terms and Conditions also included a paragraph on prohibited uses:

I agree that the Vehicle shall NOT be used by or for any of the following PROHIBITED USES:

a. by an unauthorized driver;

b. by any driver under the influence of intoxicants, drugs, or any other substance known to impair driving ability;

c. for any illegal purpose;

d. by anyone who gives the Company a false name, address, age or other false or misleading information;

e. in any abusive or reckless manner;

f. to carry persons or property for hire;

g. to tow or push anything;

h. in any race, test, contest, or training activity;

i. for any use in Mexico without the prior written permission of the renting location. All protection is void in Mexico. Your written permission must be obtained and special insurance must be purchased before entering Mexico.

I UNDERSTAND THAT IF THE VEHICLE IS OBTAINED OR USED FOR ANY PROHIBITED USE OR IN VIOLATION OF THIS AGREEMENT, THEN THE CDW OPTION SHALL BE VOID AND, WHERE PERMITTED BY THE LAW, THE LIABILITY AND COMPREHENSIVE PROTECTION, PAI, PEC, AND SLI INSURANCE SHALL BE VOID.

On August 29, 1988, the van was damaged while Lauvetz was driving. As a result of the accident, Lauvetz was charged with and pled no contest to reckless driving. AS 28.35.040.

National subsequently filed suit against Lauvetz and Osborne, seeking compensatory and punitive damages for the wreck of the van. The complaint alleged that Lauvetz was intoxicated at the time of the accident and that this intoxication was a causal factor of the accident. The complaint further claimed that the CDW did not apply, because Osborne and Lauvetz remained liable for any damage resulting from a prohibited use of the vehicle, specifically, use by an intoxicated driver or use in a reckless manner.

During preliminary proceedings, National sought and obtained partial summary judgment on the validity and enforceability of the exclusions to the CDW option. The superior court ruled that the "terms and provisions of the collision damage waiver in the car rental agreement governing drunk and reckless driving are valid, binding, and enforceable, and the Court rejects Defendants' position that the CDW is insurance." This court accepted Lauvetz's petition to review the grant of partial summary judgment.

## II

Lauvetz argues that the exclusions were beyond the reasonable expectations of lessees accepting National's standardized contract. Before considering the parties' specific arguments, it is necessary to discuss the applicable law.

### A

■ Section 211 of the Restatement Second of Contracts addresses the question of interpreting standardized form agreements:

> (1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.
>
> . . . .
>
> (3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

Restatement (Second) of Contracts § 211 (1981). Thus, this section establishes the general enforceability of the terms of standardized forms, without regard for whether the customer reads or understands those terms. *Id.* at comment b. This general enforceability, however, is subject to limita-tions of reasonableness: Customers "are not bound to unknown terms which are beyond the range of reasonable expectation." *Id.* at comment f.

Although we have never explicitly endorsed Section 211 as the appropriate analysis for standardized agreements, we have invoked a doctrine of reasonable expectations in analogous situations. *See Hillman v. Nationwide Mutual Fire Ins. Co.*, 758 P.2d 1248 (Alaska 1988); *State v. Underwriters at Lloyds, London*, 755 P.2d 396 (Alaska 1988). Both of those cases involved insurance contracts. The operative fact in both situations, however, was that the policy was a contract of adhesion, rather than a negotiated agreement. *Hillman*, 758 P.2d at 1250; *Lloyds, London*, 755 P.2d at 400. As a consequence, the agreements were "construed according to the principle of reasonable expectations." *Hillman*, 758 P.2d at 1250; *Lloyds, London*, 755 P.2d at 400.

These cases suggest that "reasonable expectations" are those expectations a consumer would have *after* reading the form. For example, we noted that an "insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language." *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977); *see also Wainscott v. Ossenkop*, 633 P.2d 237, 243–44 (Alaska 1981) ("[insurance] policy must be construed 'so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy's terms'") (quoting *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972)). Thus, this principle of reasonable expectations is somewhat different from the principle embodied in Section 211, which actually presumes that the customer does not read the contract. Restatement (Second) of Contracts § 211 comment b (1981) ("Customers do not in fact ordinarily understand or even read the standard terms.").[1]

---

1. We have suggested in dicta an analysis closer to Section 211:

An unusual or unexpected term in an adhesion contract which falls outside the weaker

The distinction is significant in this case. Given the clarity of the terms and conditions, there is little room for argument that a *Stordahl*-type "lay interpretation" of the terms would differ from a legal interpretation. The *Stordahl* approach is inadequate, however, in cases where consumers probably will not read adhesive contracts and will not have any choice in the terms even if they do read them. *See Burgess Constr. Co. v. State,* 614 P.2d 1380, 1383 (Alaska 1980). Section 211, on the other hand, emphasizes the reasonableness of the term or condition, no matter how clear its meaning might be to the layman if he happened to read it. The Arizona Supreme Court justified its endorsement of Section 211 by noting that

> [t]o acknowledge standardized contracts for what they are—rules written by commercial enterprises—and to enforce them as written, subject to those reasonable limitations provided by law, is to recognize the reality of the marketplace as it now exists, while imposing just limits on business practice.

*Darner Motor Sales v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388, 399 (1984). We agree and adopt the analysis of Section 211 with regard to standardized form agreements outside the insurance context.

### B

■ National emphasizes that reasonableness is an objective concept, and adds that "[n]o person who drives a car that does not belong to him can have any reasonable expectation that he can drive that car recklessly or while intoxicated." It argues that Lauvetz's claimed reasonable expectations are nothing more than "subjective and self-serving statements of [his] intent concerning the meaning of the CDW." Such subjective intent, National asserts, has no probative value, citing *Peterson v. Wirum,* 625 P.2d 866, 870 (Alaska 1981).

> party's "reasonable expectations" will be denied effect against him, unless it has been brought to his attention by express notice, as by clear, plain and conspicuous language on the face of the ·contract....

National notes that the doctrine of reasonable expectations is nothing more than a judicial construct for imposing community standards of reasonable behavior on the private law of contracts. National argues that under modern community standards, drunk driving is viewed as a serious threat to public safety. *State v. Conley,* 754 P.2d 232, 236 (Alaska 1988) ("drivers impaired by intoxication present a substantial risk to the driving public"). Thus, National contends that Lauvetz's position that a prohibition against drunk and reckless driving is an unconscionable or unreasonable limit on the CDW is absurd.

National mischaracterizes the relevant question. It is not whether a prohibition against drunk driving is unreasonable; any renter would certainly know that the law prohibits drunk driving on pain of severe penalties. *See* AS 28.35.030(c) (mandating incarceration, a fine, *and* revocation of driver's license even for first conviction). Rather, the relevant question here is whether the purchaser of the damage waiver reasonably expected the waiver to be subject to any exclusions. We conclude that a consumer would not reasonably expect the damage waiver to be less than complete.

■ The common law rule is that bailees are not responsible "for damages unattributable to their fault." *Dresser Industries v. Foss Launch & Tug Co.,* 560 P.2d 393, 395 (Alaska 1977). This rule may be altered by contract. *Id.* The standardized form used by National did in fact purport to alter that common law rule by making the bailee responsible for any damage, however caused. The CDW then offered the bailee protection from National's unilateral alteration of the common law rule, ostensibly subject to the exclusions.

■ We think that the common law rule aptly expresses a bailee's reasonable expectation: He will be responsible for any dam-

*Burgess Constr. Co. v. State,* 614 P.2d 1380, 1384 (Alaska 1980).

age caused by his fault. The average car renter would not parse that "fault" into the fine legal categories of "negligence," "recklessness" or "volitional conduct." When offered the CDW, the bailee would reasonably expect this option, at the not inconsiderable rate of $8.95 per day, to relieve him of responsibility *even if* the damage were caused by his fault. Again, the average car renter would not parse that fault into fine legal categories.

As the Colorado Supreme Court commented in a case similar to the present one, "lessors should know that the simple, highly readable summary of the collision responsibility alternatives will lead an average customer to reasonably conclude that he is protected against most, if not all, risks." *Davis v. M.L.G. Corp.*, 712 P.2d 985, 992 (Colo.1986). In this case, there was not even a summary of the responsibility alternatives. Lauvetz merely had the choice between a damage waiver and no waiver, protection against damaging the car or no protection. In deciding today that a consumer would reasonably expect that the rental company's waiver is complete, we join the large number of courts who have refused to enforce damage waiver exclusions under a variety of circumstances. *E.g., id.; Automobile Leasing & Rental, Inc. v. Thomas*, 100 Nev. 261, 679 P.2d 1269, 1271 (1984).[2]

The superior court's grant of partial summary judgment in favor of National on the enforceability of the CDW exclusions is REVERSED and this case REMANDED for further proceedings consistent with this opinion.

---

**2.** *See also National Car Rental Sys. v. Council Wholesale Distrib., Inc.*, 393 F.Supp. 1128 (M.D.Ga.1974); *Union County U–Drive It v. Blomeley*, 48 N.J.Super. 252, 137 A.2d 428 (1958); *Elliott Leases Cars, Inc. v. Quigley*, 373 A.2d 810, 813–14 (1977); *Val Preda Leasing, Inc. v. Rodriguez*, 149 Vt. 129, 540 A.2d 648, 652 (1987); *cf.* Ill.Ann.Stat. ch. 95½, ¶ 6–305(f) (Smith–Hurd Supp.1991) (prohibiting CDWs altogether).