942 P.2d 507

**BUDGET RENT–A–CAR SYSTEMS, INC., Plaintiff–Appellant,**

v.

**Clemente C. RICARDO and Robert Gates, Defendants–Appellees.**

No. 19738.

Supreme Court of Hawai'i.

June 16, 1997.

Kathy M. Sarria (Carleton B. Reid of Reid, Richards & Miyagi, with her on the briefs), Honolulu, for plaintiff-appellant Budget Rent–A–Car Systems, Inc.

Tracy G. Chinen (Lance S. Au of Rush Moore Craven Sutton Morry & Beh, with him on the brief), Honolulu, for defendant-appellee Clemente C. Ricardo.

Roy J. Bell, III, Honolulu, for defendant-appellee Robert Gates.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

This declaratory relief action arose out of a one-car accident that took place on Ahukini Road on the island of Kauai. Clemente Ricardo, driving a Ford Mustang that he had rented from Budget Rent–A–Car Systems, collided with a telephone pole, resulting in injuries to the passenger, Robert Gates. Relying on language in its rental agreement with Ricardo that denies liability if the renter drives while under the influence of alcohol, Budget filed this action seeking a declaratory judgment that it had no obligation to defend or indemnify Ricardo for any claims arising out of the accident because he was drunk at the time. The trial court ruled in favor of Ricardo on public policy grounds and awarded attorney's fees and costs. We affirm in part and reverse in part.

## I. *BACKGROUND*

Following the October 30, 1992, accident, Ricardo was given a blood test at Wilcox Memorial Hospital, which revealed a blood alcohol content of .24 percent. The back of the rental agreement signed by Ricardo contained, in paragraph 5(B), the following restriction: "Vehicle will not be used or operated by anyone . . . [w]hile intoxicated or under the influence of any drugs or other substances which would impair driving ability[.]" The rental agreement purported to deny liability coverage in case of violation of this and other use restrictions.

Gates filed a personal injury action against Ricardo and Legends Nightclub. Budget filed this Complaint for Declaratory Relief on April 15, 1994, against Ricardo and Gates, alleging that Ricardo was in violation of paragraph 5(B) of the rental agreement and was therefore not entitled to defense or indemnification by Budget against any claims arising out of the October 1992 accident. Motions for summary judgment were filed by both Budget and Ricardo. On June 29, 1995, the circuit court denied Budget's motion and granted Ricardo's. The court ruled that the intoxication use restriction in paragraph 5(B) was in violation of public policy and that

Budget had a duty to defend and indemnify Ricardo.

Gates and Ricardo then requested and were awarded attorneys' fees and costs pursuant to Hawai'i Revised Statutes (HRS) §§ 431:10–242 and 431:10C–105 (1993). Budget's Motion for Leave to Amend Complaint was denied.[1] Following entry of judgment, Budget brought this timely appeal.

## II. *DISCUSSION*

### A. *Standard of Review*

 Under the Hawai'i Rules of Civil Procedure (HRCP), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56 (1993). The evidence should be viewed in the light most favorable to the non-moving party. *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995). On appeal, an order of summary judgment is reviewed de novo under the same standard. *Harris v. DeSoto*, 80 Hawai'i 425, 431, 911 P.2d 60, 66 (1996).

### B. *A Self–Insured Car Rental Agency's Attempt To Limit Its Liability Through An Intoxication Restriction In Its Rental Agreement Violates Public Policy*

 Budget claims that it is not contractually obligated to defend or indemnify Ricardo because he was operating the vehicle while intoxicated, which is in violation of the express terms of Ricardo's rental agreement with Budget. On the back of the rental agreement signed by Ricardo is found the following paragraph:

> 5) USE RESTRICTIONS: Vehicle will not be used or operated by anyone:
>
> A. Who intentionally or as a result of wilful or wanton misconduct damages the Vehicle;

---

1. This motion by Budget sought to add a claim against Ricardo for breach of the intoxication restriction in the rental agreement. Because we

hold this restriction to be in violation of public policy, we need not discuss this issue in this opinion.

B. While intoxicated or under the influence of any drugs or other substances which would impair driving ability;

C. While engaged in any speed contest or training activity;

D. Who obtains the Vehicle with fraudulent or false information;.

E. While committing or involved in a crime that could be charged as a felony;

F. To carry persons or property for hire or to push or tow anything;

G. Who is an unauthorized driver;

H. Outside the continental United States, without the specific authorization of the renting location;

I. On other than regularly maintained roadways, or unpaved roads;

J. Fails to report theft, vandalism or any accident to the renting location and police authority within 24 hours; or

K. Allows another person, including any Authorized Driver, to come into possession of the Vehicle, or the keys to the Vehicle, and the Vehicle is not returned on the due back date;

L. To carry hazardous or explosive substances; or

M. To transport a weight which is in excess of the maximum payload capacity for the vehicle;

N. Who does not know how to drive a stick shift vehicle (if Vehicle has a stick shift transmission);

O. In or through the structure of any underpass or other object where there is insufficient clearance, whether of height or width;

P. Who causes damage to the freight box resulting from inadequately secured cargo; or Improper Loading (Truck and Van only);

Q. Who drives on Route 200 (Saddle Road) Hawaii, except for government renters with official duty orders.

**2.** Additionally, below the rental agreement's signature line, in what appears to be 6–point typeface, renters are advised: "If Renter accepts LDW, Renter will not be responsible for such

Liability coverage is limited, in the agreement's following paragraph, so as not to apply if there is a violation of any of these seventeen use restrictions. While Ricardo declined the "loss damage waiver" offered (at $12.99 a day) by Budget on the front of the agreement, a clause on the back declares that "[i]f Renter accepts LDW but violates a use restriction provided in Paragraph 5, LDW is voided and Renter will be responsible for loss of or damage to the Vehicle as if Renter declined LDW." [2]

· Since 1974, Hawai'i has operated under a statewide system of mandatory no-fault insurance. The purpose of the Motor Vehicle Insurance Law, HRS Chapter 431, Article 10C (1993), is set out in § 431:10C–102:

(a) The purpose of this article is to:

(1) *Create a system of reparations for accidental harm and loss arising from motor vehicle accidents;*

(2) *Compensate these damages without regard to fault;* and

(3) *Limit tort liability* for these accidents.

(b) To effectuate this system of motor vehicle insurance and to encourage participation by all drivers in the motor vehicle insurance system:

(1) Those uninsured drivers who try to obtain the privilege of driving a motor vehicle without the concomitant responsibility of an ability to compensate adequately those who are injured as a result of a motor vehicle accident are to be dealt with more severely ...

(Emphasis added). As expressed in the legislative history, the legislature, in passing this no-fault insurance system into law, was

of the belief that a basic, comprehensive, equitable and reasonably priced auto insurance policy must satisfy each of the following criteria:

(1) Provide for a speedy, adequate and equitable reparation for those injured or otherwise victimized;

loss or damage, EXCEPT AS PROVIDED IN PARAGRAPH 5 ON THE REVERSE SIDE. LDW IS NOT INSURANCE."

(2) Provide for the stabilization and reduction of motor vehicle liability insurance premium rates;

(3) Provide insurance coverage for all who require it, at a cost within the reach of every licensed driver;

(4) Provide for a compulsory insurance system;

(5) Provide for adequate regulatory control.

Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219; *see also* Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635. With this intention, the legislature enacted, *inter alia,* HRS § 431:10C–104 (1993):

**Conditions of operation and registration of motor vehicles.** (a) ... [N]o person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

(b) Every owner of a motor vehicle used or operated at any time upon any public street, road or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this article and shall maintain the no-fault policy at all times for the entire motor vehicle registration period.

The basic no-fault policy requirement is outlined in HRS § 431:10C–301(a) (1993):

**Required motor vehicle policy coverage** (a) In order to meet the requirements of a no-fault policy as provided in this article, an insurance policy covering a motor vehicle shall provide:

(1) Coverage specified in section 431:10C–304; and

(2) Insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others ... which arise out of the ownership, operation, maintenance, or use of the motor vehicle[.]

The operation of a vehicle not covered under either a no-fault policy or an approved certificate of self-insurance can lead to penalties, including fines, suspension of vehicle registration, and imprisonment. *See* HRS §§ 431:10C–104(c) and 431:10C–117 (1993); Hawai'i Administrative Rules (HAR) § 16–23–2 (1993).

The only exception to this sweeping mandate of a no-fault insurance policy on all vehicles is for qualified self-insurers:

The motor vehicle insurance required by section 431:10C–104 may be satisfied by any owner of a motor vehicle if:

(1) Such owner provides a surety bond, proof of qualifications as self insurer, or other securities *affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all times for the entire motor vehicle registration period,* as determined and approved by the commissioner under regulations; and

(2) The commissioner is satisfied that in case of injury, death or property damage, *any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.*

HRS § 431:10C–105 (1993) (emphasis added).

A person seeking to qualify as a self-insurer must apply to the insurance commissioner in the state's Department of Commerce and Consumer Affairs (DCCA). HAR § 16–23–20 (1993). The DCCA's regulations seek to implement the legislature's directive that a self-insurer provide identical benefits to those available under the state-wide no-fault policy mandate. *See* HAR § 16–23–21 (detailing required content for agreement as self-insurer); § 16–23–22 (financial responsibility requirement); § 16–23–24 (proof of ability to process and pay claims promptly); § 16–23–31 (providing for revocation of certification of self-insurance for good cause).

Pointing to this broad legislative framework, Ricardo argues that the intoxication use restriction found in Paragraph 5(B) of Budget's rental agreement violates public policy. A number of jurisdictions have found

use restrictions involving intoxication invalid on public policy grounds. *See Hertz Corp. v. Garrott,* 238 Ill.App.3d 231, 179 Ill.Dec. 387, 606 N.E.2d 219 (1992), *review denied,* 148 Ill.2d 642, 183 Ill.Dec. 19, 610 N.E.2d 1263 (1993); *Donegal Mut. Ins. Co. v. Long,* 387 Pa.Super. 574, 564 A.2d 937 (1989), *aff'd,* 528 Pa. 295, 597 A.2d 1124 (1991); *Bass v. Horizon Assurance Co.,* 562 A.2d 1194 (Del. Supr.1989); *Allstate Ins. Co. v. Sullivan,* 643 S.W.2d 21 (Mo.App.1982); *see also Lauvetz v. Alaska Sales and Serv.,* 828 P.2d 162 (Alaska 1991), *reh'g denied* (Feb. 18, 1992) (intoxication exclusion violates reasonable expectations of purchaser); *Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986) (same). The Delaware Supreme Court, for example, found an alcohol exclusion to "conflict[ ] with the basic statutory requirement of providing minimum legal coverage for claims by victims of an automobile accident, regardless of fault." *Bass,* 562 A.2d at 1197. Similarly, the *Donegal* court struck down the use limitation on a public policy rationale:

> The purpose of the [Pennsylvania] Motor Vehicle Responsibility Law is to require owners of registered vehicles to be financially responsible. The clause in the rental agreement which excludes coverage for liability arising from the operation of the vehicle while under the influence of drugs or alcohol is inimical to this purpose. If the clause were permitted to stand, the owners of rental vehicles would have an avenue to avoid their financial responsibility to the victims of accidents whenever the driver of the leased vehicle was intoxicated or sometimes when he was negligent. Victims of accidents with rental vehicles might therefore find themselves without recourse to compensation for their injuries, or perhaps only to the extent of their own uninsured motorist coverage, absent the fortuity that the driver of the rental vehicle is covered by other insurance or possesses sufficient assets for compensation. The public policy enunciated by the Motor Vehicle Financial Responsibility Law ... is to foster financial responsibility for damages caused to individuals on the roadway, not to promote uninsurance.

564 A.2d at 943–44.

Budget refers us to the contrary holding in *Public Employees Mut. Ins. Co. v. Hertz Corp.,* 59 Wash.App. 641, 800 P.2d 831 (1990), *review denied,* 116 Wash.2d 1013, 807 P.2d 884 (1991). The court in that case approved the denial of insurance based on an intoxication exclusion in a rental agreement: "[E]xclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason." 800 P.2d at 832–33 (quoting *Eurick v. Pemco Ins. Co.,* 108 Wash.2d 338, 738 P.2d 251, 253–54 (1987)). The Washington appellate court approved the restriction because "the prohibited use clause in this case directly relates to an increased risk on the part of the insurer." 800 P.2d at 833.

We do not find this reasoning convincing, and we hold that the use restriction purporting to limit Budget's liability in the event of an accident in which the renter is intoxicated is in violation of public policy. Most accidents are caused by some form of negligent conduct. Taken to its logical extreme, the rationale offered by the Washington appellate court would support a "use restriction" that sought to limit Budget's liability in any accident involving the renter's negligence. Unfortunately, this concern is not merely imaginary. The casebooks are strewn with examples of how far the proposition here urged upon us can be taken. In *Val Preda Leasing, Inc. v. Rodriguez,* 149 Vt. 129, 540 A.2d 648 (1987), for example, a Budget rental agency disclaimed liability for an accident caused when a renter fell asleep at the wheel based on a contractual limitation that the vehicle "shall not be used or operated by any person ... who is not sufficiently alert or capable of safely driving [the] vehicle." *Id.,* 540 A.2d at 649. The Vermont Supreme Court, noting Budget's "extensive list" of such prohibitions, held the agreement unconscionable and unenforceable. *Id.* at 652.

The Nevada Supreme Court came to a similar conclusion in *Automobile Leasing & Rental, Inc. v. Thomas,* 100 Nev. 261, 679 P.2d 1269 (1984), in which it faced the argument by a car rental company that a renter, who was struck from behind while making a

left turn and was subsequently ticketed for turning from an improper position, was not entitled to insurance coverage because she was not in conformity with the rental agreement's requirement that the vehicle not be used in an "unlawful manner" and be returned "in the same condition as when received." *Id.,* 679 P.2d at 1270.

■ Moreover, a number of the seventeen use restrictions listed by Budget on the reverse side of its rental agreement, individually and in combination, amount to an attempt to reintroduce fault principles into the no-fault system in Hawai'i through the "back door" method of permissive use restrictions imposed by a self-insured owner. *See, e.g.,* paragraph 5(B) (intoxication/drug use); 5(C) ("speed contest"); 5(F) ("to push ... anything"); 5(I) (driving on unpaved or unmaintained roads); 5(M) (overweight); 5(N) (unfamiliar with stick shift); 5(O) (accident due to insufficient vertical or horizontal clearance); 5(P) (cargo unsecured). Such restrictions go a long way towards the introduction of a fault element into insurance coverage, which would obviously conflict with this state's no-fault law. As defined by the legislature, "without regard to fault means irrespective of fault as a cause of accidental harm, and without application of the principle of liability based on negligence." HRS § 431:10C–103(24) (1993); *see also Davis v. M.L.G. Corp.,* 712 P.2d 985, 987 (Colo.1986) (discussing lower court's ruling, affirmed on other grounds, that "by conditioning its collision protection on factors such as sobriety, [the insurer] had attempted to inject a fault element into its insurance coverage," contrary to public policy as expressed in Colorado's no-fault act).

Budget seeks to avoid the policy reasons articulated by those courts holding an intoxication restriction violative of public policy by suggesting that "these cases ignore the law in Hawaii which specifically allows a car owner to dictate the terms of a user's permissive use." We are referred to our decision in *Budget Rent–A–Car Systems v. Coffin,* 82 Hawai'i 351, 922 P.2d 964 (1996). *Coffin* involved an accident that took place on the Big Island's Saddle Road. The plaintiff in that case had signed a rental agreement that contained a prohibition on use of the rental car on the Saddle Road. We held that (1) the statutory no-fault framework outlined above did not "mandate that insurance companies or self-insurers must provide coverage for any and all accidents that occur on a public road, street or highway," *id.* at 355, 922 P.2d at 968, and (2) the use restriction barring operation of Coffin's rental vehicle on the Saddle Road did not violate public policy. *Id.* at 358, 922 P.2d at 971.

■ It is true that there is general language in *Coffin* that could be interpreted to approve the application of any imaginable use restriction. *See, e.g., id.* at 357, 922 P.2d at 970 ("unlike an 'insurer' which limits its liability through the use of policy exclusions ... a car rental company may take a more direct route toward the same end, in its capacity as 'owner' of the rental vehicle, by directly limiting the customer's permission to use the rental vehicle by prohibiting its customers from using the rental vehicle under certain conditions, or in designated areas, by mutual contractual agreement"). The case, however, does not stand for any such broad proposition; like any precedent, *Coffin* was decided on the facts then before the court. A self-insurer, like a liability insurer, may of course limit its liability in any way not in violation of statute or public policy. *Id.* at 358, 922 P.2d at 969; *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 121, 883 P.2d 38, 42, *reconsideration denied,* 77 Hawai'i 489, 889 P.2d 66 (1994). But as this court has held, "the rental agreement is not a contract of insurance and is not the source of the customer's entitlement to insurance coverage; the customer is statutorily entitled to the minimum motor vehicle insurance coverage required by HRS § 431:10C–301." *Coffin,* 82 Hawai'i at 357, 922 P.2d at 970. Therefore, a third party's access to insurance coverage does not depend on the content of that rental agreement. The vehicle rented by Ricardo was insured by Budget pursuant to the certificate issued by the DCCA to Budget certifying that its insurance was equivalent to a no-fault policy. We have no doubt that this court would strike down on policy grounds a liability insurer's attempt to limit its liability in case of intoxication; Bud-

get cannot avoid this result by attempting to characterize the restriction as merely a limitation on the renter's permissive use. To hold otherwise would be to render insurance coverage largely illusory.

Even before *Coffin* was decided, the legislature had acted to eliminate a typical "permissive use" limitation found in rental agreements. Pursuant to its 1992 amendment, HRS § 431:10C–301(a)(2) mandates that car rental companies must provide

> insurance to pay on behalf of the renter or any operator of the insured motor vehicle using the motor vehicle with the express permission of the renter or lessee, sums which the renter or operator may be legally obligated to pay for damage or destruction of property of others ...; provided that the insurer and owner of a U-drive vehicle shall have the right of subrogation against the renter and operator for breach of the rental contract between owner and renter[.]

The legislative history explains that this bill

> require[s] insurers or self-insurers of U-drive vehicles to extend their insurance coverage to any person driving the insured vehicle with the permission of the person renting it.
>
> . . .
>
> Your Committee finds that the current law governing insurance coverage for rental motor vehicles is discriminatory and subject to loop-holes [sic] which permit rental companies to avoid coverage in circumstances where one would expect it. This bill would help alleviate this problem by providing insurance coverage in a situation where the ordinary consumer would reasonably expect coverage.

Sen. Stand. Comm. Rep. No. 2071, in 1992 Senate Journal, at 983–84; *see also* Hse. Stand. Comm. Rep. No. 1250–92, in 1992 House Journal at 1376–77; Hse. Conf. Comm. Rep. No. 72, in 1992 House Journal, at 823. This sensible general approach preserves basic no-fault coverage while allowing for a breach of contract action by the rental agency against the renter for any violation of the permissive use restriction relating to authorized drivers—rather than visiting the un-

expected absence of insurance on innocent third parties or unsuspecting renters.

■ Finally, Budget argues that its use restriction is valid because "the conduct Budget sought to prevent (driving while intoxicated) is against state law." This argument is without merit. We agree with the Delaware Supreme Court, which declared in rejecting such a claim that

> the fixing of penalties for antisocial conduct is, in the first instance, a governmental responsibility.... The [legislature] has expressly determined the consequences which result from a conviction of driving under the influence. These sanctions include the criminal penalties of fine and or imprisonment, and license revocation through administrative action. We do not believe that the [legislature], in addition to the imposition of these substantial penalties, also intended ... to work a forfeiture of insurance protection purchased in conformity with State law.

*Bass,* 562 A.2d at 1197 (citations omitted). Budget may not separately impose sanctions on private citizens for driving while intoxicated, in the name of public policy, when such sanctions are a hardship on the general public while benefitting the self-insured rental agency. *See Garrott,* 179 Ill.Dec. at 392, 606 N.E.2d at 224.

## C. *Attorneys' Fees*

■ Budget contests the trial court's award of attorney's fees and costs to Ricardo and Gates pursuant to HRS § 431:10–242 (1993). That statute provides as follows:

> Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be awarded reasonable attorney's fees and costs of suit, in addition to the benefits under the policy.

HRS § 431:10–242. Budget asserts that it is not an "insurer," as that term is defined in HRS § 431:10C–103(5). In ruling against Budget, the trial court explained:

> The Court doesn't feel that by being a self-insured that you can, so to speak, get away

with the—with challenging coverage questions and then not have to pay the attorneys' fees and costs that an insurer would have to pay under the law.

The Court finds under the circumstances that a self-insurer would be treated the same as an insurer under the law in this [sic] circumstances[.]

However, in holding in *Coffin* that the Saddle Road use limitation did not violate public policy, this court observed:

HRS § 431:10C–103(5) defines "insurer" as "every person holding a valid certificate of authority to engage in the business of making contracts of motor vehicle insurance in this State." Budget ... is not "in the business of making contracts of motor vehicle insurance"; to the contrary, Budget is merely the self-insured "owner" of a fleet of motor vehicles that it permits others to use for a fee. To hold otherwise would effectively render all car rental companies doing business in Hawai'i "insurers," regardless of whether they are self-insurers or not, generally subjecting them to the requirements of HRS chapter 431 and to the regulatory control of the insurance commissioner and the Department of Commerce and Consumer Affairs.

82 Hawai'i at 356–57, 922 P.2d at 969–70 (footnotes omitted).[3] Thus, because Budget is not an "insurer" as defined in HRS § 431:10C–103(5), we hold that the trial court erred in granting attorney's fees and costs under that statute.

### III. *CONCLUSION*

Because Budget's effort to avoid liability as a self-insurer in instances when renters of its vehicles drive while intoxicated violates the public policy of this state, we affirm the trial court's grant of summary judgment for Ricardo and Gates. However, we reverse the trial court's award of attorney's fees and costs pursuant to HRS § 431:10C–105(1).

---

**3.** As should be clear from the discussion above regarding self-insurance requirements, however, self-insurers are in fact subject to the regulatory control of the insurance commissioner and the Department of Commerce and Consumer Affairs. *See* HRS § 431:10C–105(1), *supra;* HAR §§ 16–23–20 through 16–23–32 (1993).