# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01217-SCT

*MARK HANCOCK AND SUZANNE MOORE,*
*BENEFICIARIES OF THE LIFE INSURANCE*
*PROCEEDS OF MARY CARLISLE*

*v.*

*MID AMERICAN INSURANCE SERVICES, INC.*
*d/b/a AMERICAN HEALTH AND LIFE INSURANCE*
*COMPANY AND /OR GULF INSURANCE*
*COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/11/2000 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JIM WAIDE |
| | MARTIN D. CRUMP |
| | D. KIRK THARP |
| | VICTOR ISRAEL FLEITAS |
| | JOHN P. FOX |
| ATTORNEY FOR APPELLEE: | WADE G. MANOR |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 01/30/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     After purchasing personal accident insurance with death benefits from Mid American Insurance Services, Inc. ("Mid American") when she rented a car from Enterprise Rent-a-Car, in Tupelo, Mississippi, Mary Carlisle was killed in an accident while operating the rental car in Memphis, Tennessee.  Mid American  refused to pay any insurance benefits to Mark Hancock or Suzanne Moore, Carlisle's heirs,

alleging a violation of the rental agreement/insurance policy. This action was filed in the Circuit Court of Lee County on August 30, 1996. Mid American was added as a defendant in the Second Amended Complaint. The circuit court determined that there were no disputed facts material to this case and granted summary judgment for Mid American. We find that there are material issues as to whether the type of provision exercised by the company to refuse to pay was not material to the acceptance of the risk or hazard it assumed. We therefore reverse the circuit court's summary judgment and remand for a trial.

## FACTS

¶2.     Carlisle rented a car from Enterprise and at the same time she exercised her option to purchase personal accident insurance with death benefits. In addition to the rental contract, there was a $50,000 life insurance contract for accidental death benefits that required payment of $1.00 per day while the vehicle was rented. Nine days after renting the car, Carlisle was killed in an accident while driving the rental car in Memphis, Tennessee. Carlisle's beneficiaries, Mark Hancock and Suzanne Moore, sought the benefits from Carlisle's life insurance policy. Mid American withheld payment contending that by taking the car out of Mississippi, Carlisle violated the rental agreement and thereby also violated the insurance policy.

¶3.     The contract stated that "subject to the provision that '[t]his insurance shall not be effective and no payment of any kind shall be made for injury occurring during any period while the insured renter is in violation of the rental agreement with the Lessor . . .'" There is no proof that Mid American provided a complete copy of the insurance contract to the decedent. However, on the rental contract, there is a box which reads as follows:

> RENTER REQUESTS PERSONAL ACCIDENT INSURANCE (PAI) AT DAILY FEE SHOWN IN ADJACENT COLUMN AND **HAS READ THE POLICY CERTIFICATE**

2

(emphasis added). An "X" inside this box has been circled, and Carlisle's initials are signed next to it. It is clear on the face of the record that Carlisle in her own hand noted that she read the policy certificate. The column to the right of the box indicates that Carlisle was charged $1.00 per day for an 11 day rental period for the insurance.

¶4. The rental contract does indicate (by the marking of another box, which is initialed by an employee of the car rental agency) that Carlisle did not obtain permission to drive the vehicle outside of the state. Also, on the reverse side of the contract, in section 13, sub-section (f), near the end of the page, driving outside the state of rental without the written consent of the rental company is declared to be a violation of the rental contract. However, we find no additional information about the insurance policy anywhere in the rental contract nor does it state it would void the insurance contract.

¶5. Section G, on the second page of the copy of the insurance policy provided to this Court, lists the exclusions of the accidental death policy. It is on this page that the following language is found: "This insurance shall not be effective, and no payment of any kind shall be made for injury occurring during any period while the Insured Renter is in violation of the Rental Agreement . . . ." Further, on a separate sheet, entitled "Declarations" we find that the policy has a death benefit of $50,000.

¶6. The policy clearly states that each insured renter is to be given a statement which summarizes the protection, limitations and requirements of the policy purchased. However, based on the deposition testimony of Mid-American's representative, it is unclear whether the employees of the car rental agency had reason to know that they were obligated to provide a copy of such information to Carlisle.

## STANDARD OF REVIEW

¶7. For a summary judgment motion to be granted, there must exist no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c). The standard

3

of review of a trial court's grant of a motion for summary judgment is de novo. *Short v. Columbus Rubber & Gasket Co.,* 535 So. 2d 61, 63 (Miss.1988). The burden of demonstrating that there is no genuine issue of material fact falls upon the party requesting the summary judgment.*Id.* at 63-64. The court must carefully review all evidentiary matters before it; admissions in pleadings, answers to interrogatories, depositions, affidavits, etc., in the light most favorable to the party against whom the motion for summary judgment is made. *McFadden v. State,* 542 So. 2d 871, 874 (Miss.1989).

¶8.     When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss.2000) (citing *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362 (Miss.1983)).

## DISCUSSION

**WHETHER THE CIRCUIT COURT ERRED BY GRANTING SUMMARY JUDGMENT TO MID AMERICAN INSURANCE, SINCE MID AMERICAN'S BASIS FOR REFUSING TO PAY THE BENEFICIARIES WAS NOT MATERIAL TO THE ACCEPTANCE OF THE RISK OR HAZARD IT ASSUMED.**

¶9.     In *Clark v. State Farm Mutual Automobile Ins. Co.*, 725 So. 2d 779 (Miss. 1998), this Court expressly reserved the question of whether territorial limitations in insurance policies are against public policy in Mississippi. *Id*. at 781 n. 2. The Fifth Circuit answered this lingering question in the negative in *Boatner v. Atlanta Specialty Ins. Co.*, 115 F.3d 1248, 1254 (5th Cir. 1997).

4

¶10. The Illinois Appellate Court has noted that "[t]he overwhelming weight of authority holds territorial limitations are valid if they apply equally to statutorily mandated uninsured motorist and liability coverages." *Mijes v. Primerica Life Ins. Co.*, 317 Ill. App. 3d 1097, 1102, 740 N.E.2d 1160, 1164 (2001) (citations omitted). The last part of that sentence makes the case sub judice different from other cases dealing with this subject. The cases that have found the intoxication exclusions from coverage to be against public policy are dealing with required liability insurance coverage. This is a case involving supplemental life insurance–not statutorily required liability coverage.

¶11. Hancock and Moore assert that the basis of the denial was not material to the acceptance of the risk of hazard to be assumed by the insurance company. Considering the fact that the insurance premium would not have changed if Carlisle had initially stated she was going to travel out of state, they contend that the fact that she did exposed the insurer to no extra risk. Mid American asserts that whether Carlisle misrepresented something on the contract is not the issue. Rather, Mid American contends that the issue is simply contract interpretation. It argues, therefore, that since the prohibition on out-of-state travel is unambiguous then it should prevail. It cites *Clark v. State Farm Mutual Automobile Ins. Co.*, 725 So. 2d 779 (Miss. 1998), for the proposition that territorial restrictions are upheld when they are clear and unambiguous.

¶12. Our holding in *Reserve Life Insurance Co. v. McGee*, 444 So. 2d 803 (Miss. 1984) was that the right to recover under an insurance policy should only be denied upon bases which materially affect the acceptance of risk or hazard assumed by the insurer. While that case dealt with an alleged falsity regarding an insured's health, the basic proposition holds true. Section 83-9-11(3) clearly states, as follows:

5

> The falsity of any statement in the application for any policy covered by Sections 83-9-1 to 83-9-21 may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Miss. Code Ann. § 83-9-11 (3) (1999). "The materiality of a representation is determined by the probable and reasonable effect which truthful answers would have had on the insurer." *Sanford v. Federated Guar. Ins. Co.*, 522 So. 2d 214, 217 (Miss. 1988) (citation omitted). The implied promise not to travel out of Mississippi is akin to a false statement regarding health. Thus, this Court reverses the summary judgment and remands for trial.

## CONCLUSION

¶13.    We find that there are disputed issues of material fact. The circuit court's grant of summary judgment is reversed, and this case is remanded for a trial.

¶14.    **REVERSED AND REMANDED**.

**WALLER, EASLEY, AND CARLSON, JJ., CONCUR. PITTMAN, C.J., CONCURS IN PART. COBB, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND GRAVES, JJ.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING:**

¶15.    I concur with the majority in finding that there are material issues as to whether the type of provision exercised by the company to refuse to pay was not material to the acceptance of the risk or hazard it assumed. However, I also dissent to the majority's finding that the territorial limitation provision is valid under this State's public policy. The exclusion exercised by Mid American was enabled through a practice which should be declared void as against public policy. Furthermore, Mid American should be estopped from enforcing the clause since it did not furnish Mary Carlisle a copy of the insurance policy.

¶16.    Our holding in ***Reserve Life Insurance Co. v. McGee***, 444 So.2d 803 (Miss. 1984), is not completely inapplicable to the case sub judice.  The reasoning which supports this Court's opinion in that case is based upon the principle that the right to recover under an insurance policy should only be denied upon bases which materially affect the acceptance of risk or hazard assumed by the insurer.  ***Id.***  However, a better and more applicable statement of such a principle, as it specifically relates to exclusions, was made by the Washington Supreme Court in ***Eurick v. Pemco Ins. Co***, 738 P.2d 251 (Wash. 1987).  The decision states that "exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when innocent victims have been denied coverage for no good reason." ***Id.*** at 253-54.

¶17.    By incorporating Section 13, subsection (f) of the rental agreement into the life insurance policy, Mid American has created a territorial exclusion which works against the public policy of this State.  Mid American's representative stated that there would have been no increase in the premium charged to Carlisle had she told them she intended to take the car out of the state.  Certainly if the insured's leaving the state were material to the acceptance of the risk by Mid American in an accidental death policy, there would have been an increase in the $1.00 a day premium.  As such, it appears that this exclusion does not bear any relation to the risk assumed by Mid American in the accidental death policy and should be declared void.  The provision in question and the manner in which it was incorporated into the insurance policy are violative of public policy.

¶18.    The exclusion exercised by Mid American was enabled through a practice which should be declared void as against public policy.  To allow such use and rental restrictions to be incorporated into the life insurance agreement would render the contract illusory.  ***Budget Rent-A-Car Systems, Inc. v. Ricardo***, 942 P.2d 507, 513 (Haw. 1997).  By allowing Mid American to incorporate the territorial

7

limitation into a rental contract, this Court has effectively endorsed the ability of such companies to market and sell insurance policies to the public which can be rendered illusory through the exercise of such catch-all clauses. Such practices should be declared void as against public policy.

¶19. Furthermore, the record in this case does not inform us as to whether Carlisle was ever provided with a complete copy of the insurance policy she purchased which would give her notice of the provisions and the limitations of said policy. An exclusion to an insurance policy, even an unambiguous one, should not be enforced against an insured who has not been afforded notice of the exclusion at the time of entering the insurance contract. Mid American should be estopped from enforcing the clause since it did not furnish the policy to Carlisle before her death.

**DIAZ AND GRAVES, JJ., JOIN THIS OPINION.**